**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Eriberto Rodriguez, as Administrator of the Estate of Joanne Rodriguez, Deceased, et al. | City of Philadelphia, et al. |

**(b)** County of Residence of First Listed Plaintiff    Philadelphia
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Philadelphia
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Royce W. Smith, Esq., Mincey & Fitzpatrick, LLC, 2 Penn Ctr., 1500 JFK Blvd., Ste. 1525, Phila., PA 19103 215-587-0006

Attorneys (If Known)
Armando Brigandi, Esq., City of Phila. Law Dept., 1515 Arch St., 14th Fl., Philadelphia, PA 19102 215-683-5381

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 USC Sec. 1983

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD
Armando Brigandi, Divisional Deputy City Solicitor

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIBERTO RODRIGUEZ, as Administrator of the** | : | Civil Action |
| **ESTATE OF JOANNE RODRIGUEZ, Deceased,** | : | |
| **4079 Creston Street** | : | NO: _____ |
| **Philadelphia, PA 19135** | : | |
| | : | |
| **XAVIER RODRIGUEZ, a Minor, by ERIBERTO** | : | |
| **RODRIGUEZ, Natural Parent and Guardian, and by** | : | |
| **DAISY MORALES, and as Maternal Grandmother and** | : | *Formerly* |
| **Co-Legal Guardian** | : | **Court of Common Pleas** |
| **2833 N. 9th Street** | : | **Philadelphia County** |
| **Philadelphia, PA 19133** | : | |
| | : | **January Term, 2014** |
| **DAISY MORALES, individually** | : | |
| **2833 N. 9th Street** | : | No. 140100028 |
| **Philadelphia, PA 19133** | : | |
| | : | *Jury Trial Demanded* |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA** | : | |
| **City Solicitor's Office** | : | |
| **One Parkway, 1515 Arch Street** | : | |
| **15th Floor** | : | |
| **Philadelphia, PA 19135** | : | |
| | : | |
| **PHILADELPHIA FIRE DEPARTMENT** | : | |
| **EMERGENCY MEDICAL SERVICES** | : | |
| **C/o City Solicitor's Office** | : | |
| **One Parkway, 1515 Arch Street** | : | |
| **15th Floor** | : | |
| **Philadelphia, PA 19135** | : | |
| | : | |
| **APRIL SMALLWOOD** | : | |
| **C/o City Solicitor's Office** | : | |
| **One Parkway, 1515 Arch Street** | : | |
| **15th Floor** | : | |
| **Philadelphia, PA 19135** | : | |
| | : | |
| **LISA MCCALL** | : | |
| **C/o City Solicitor's Office** | : | |
| **One Parkway, 1515 Arch Street** | : | |
| **15th Floor** | : | |
| **Philadelphia, PA 19135** | : | |
| | : | |
| **TRIMARK CORP.** | : | |
| **500 Bailey Avenue** | : | |
| **P.O. Box 350** | : | |
| **New Hampton, IA 50659** | : | |

VCI EMERGENCY VEHICLE SPECIALISTS      :
43 Jefferson Avenue                               :
Berlin, NJ 08009                      :
                                         :

HORTON EMERGENCY VEHICLES CO.    :
3800 McDowell Road                        :
Grove City, OH 43123                  :
                                         :
                 Defendants          :

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA – DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:   4079 Creston Street, Philadelphia, PA 19135

Address of Defendant:   City of Philadelphia Law Department, 1515 Arch Street, 14th Floor, Philadelphia, PA 19102

Place of Accident, Incident or Transaction:   2833 9. 9th Street, Philadelphia, PA
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)).        Yes ☐        No ☐

Does this case involve multidistrict litigation possibilities?        Yes ☐        No ☐
*RELATED CASE IF ANY:*

Case Number: _____ Judge _____        Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                      Yes ☐        No ☒

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
                                                                      Yes ☐        No ☒

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
                                                                      Yes ☐        No ☒

CIVIL: (Place   in ONE CATEGORY ONLY)

A. *Federal Question Cases:*                                B. *Diversity Jurisdiction Cases:*

1.  ☐  Indemnity Contract, Marine Contract, and All     Other  Contracts    1.  ☐  Insurance Contract and Other Contracts
2.  ☐  FELA                                                             2.  ☐  Airplane Personal Injury
3.  ☐  Jones Act – Personal Injury                                      3.  ☐  Assault, Defamation
4.  ☐  Antitrust                                                        4.  ☐  Marine Personal Injury
5.  ☐  Patent                                                           5.  ☐  Motor Vehicle personal Injury
6.  ☐  Labor-Management Relations                                       6.  ☐  Other Personal Injury (Please specify)
7.  ☒  Civil Rights                                                     7.  ☐  Products Liability
8.  ☐  Habeas Corpus                                                    8.  ☐  Products liability - Asbestos
9.  ☐  Securities Act(s) Cases                                              9.  ☐  All other Diversity Cases
10. ☐  Social Security Review Cases                                     (Please specify)
11. ☐  All Other Federal Questions Cases (Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, Armando Brigandi _____, counsel of record do hereby certify:

☒  Pursuant to Local Rule 53.3 A, civil rights cases are excluded from arbitration.

☐  Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐  Relief other than monetary damages is sought.

DATE:  7/24/14 _____        _____        92208
                                        **Armando Brigandi, Esquire**          Attorney I.D. #
                                        Attorney-at-Law

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:  7/24/14 _____        _____        92208
                                        **Armando Brigandi, Esquire**          Attorney I.D. #
                                        Attorney-at-Law

CIV. 609 (4/03)

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERIBERTO RODRIGUEZ, as Administrator of the** **ESTATE of JOANNE RODRIGUEZ, Deceased,** 4079 Creston Street Philadelphia, PA 19135 | **Civil Action** NO: _____ |
| **XAVIER RODRIGUEZ, a Minor, by ERIBERTO** **RODRIGUEZ, Natural Parent and Guardian, and by** **DAISY MORALES, and as Maternal Grandmother and** **Co-Legal Guardian** 2833 N. 9th Street Philadelphia, PA 19133 | *Formerly* **Court of Common Pleas** **Philadelphia County** |
| **DAISY MORALES, individually** 2833 N. 9th Street Philadelphia, PA 19133 | **January Term, 2014** **No. 140100028** |
| **Plaintiff** | *Jury Trial Demanded* |
| **v.** | |
| **CITY OF PHILADELPHIA** **City Solicitor's Office** One Parkway, 1515 Arch Street 15th Floor Philadelphia, PA 19135 | |
| **PHILADELPHIA FIRE DEPARTMENT** **EMERGENCY MEDICAL SERVICES** C/o City Solicitor's Office One Parkway, 1515 Arch Street 15th Floor Philadelphia, PA 19135 | |
| **APRIL SMALLWOOD** C/o City Solicitor's Office One Parkway, 1515 Arch Street 15th Floor Philadelphia, PA 19135 | |
| **LISA MCCALL** C/o City Solicitor's Office One Parkway, 1515 Arch Street 15th Floor Philadelphia, PA 19135 | |
| **TRIMARK CORP.** 500 Bailey Avenue P.O. Box 350 New Hampton, IA 50659 | |
| **VCI EMERGENCY VEHICLE SPECIALISTS** 43 Jefferson Avenue Berlin, NJ 08009 | |

|  | : |
|---|---|
| **HORTON EMERGENCY VEHICLES CO.** | : |
| 3800 McDowell Road | : |
| Grove City, OH 43123 | : |
|  | : |
|  | : |
| **Defendants** | : |

## CASE MANAGEMENT TRACK DESIGNATION FORM

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus -- Cases brought under 28 U.S.C. §2241through § 2255.                        ( )

(b) Social Security -- Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                        ( )

(c) Arbitration -- Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos -- Cases involving claims for personal injury or property damage from
    exposure to asbestos.                        ( )

(e) Special Management -- Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                        ( )

(f) Standard Management -- Cases that do not fall into any one of the other tracks.        ( **X** )

| 7/24/14 | _[signature]_ | City of Philadelphia, et al. |
|---|---|---|
| Date | **Armando Brigandi, Esq.** | Attorney for |
| **(215) 683-5381** | **(215) 683-5397** | **armando.brigandi@phila.gov** |
| Telephone | FAX Number | E-mail Address |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIBERTO RODRIGUEZ, as Administrator of the** | : | Civil Action |
| **ESTATE OF JOANNE RODRIGUEZ, Deceased,** | : | |
| **4079 Creston Street** | : | NO: _____ |
| **Philadelphia, PA 19135** | : | |
| | : | |
| **XAVIER RODRIGUEZ, a Minor, by ERIBERTO** | : | |
| **RODRIGUEZ, Natural Parent and Guardian, and by** | : | |
| **DAISY MORALES, and as Maternal Grandmother and** | : | *Formerly* |
| **Co-Legal Guardian** | : | **Court of Common Pleas** |
| **2833 N. 9th Street** | : | **Philadelphia County** |
| **Philadelphia, PA 19133** | : | |
| | : | **January Term, 2014** |
| **DAISY MORALES, individually** | : | |
| **2833 N. 9th Street** | : | No. 140100028 |
| **Philadelphia, PA 19133** | : | |
| | : | *Jury Trial Demanded* |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA** | : | |
| **City Solicitor's Office** | : | |
| **One Parkway, 1515 Arch Street** | : | |
| **15th Floor** | : | |
| **Philadelphia, PA 19135** | : | |
| | : | |
| **PHILADELPHIA FIRE DEPARTMENT** | : | |
| **EMERGENCY MEDICAL SERVICES** | : | |
| **C/o City Solicitor's Office** | : | |
| **One Parkway, 1515 Arch Street** | : | |
| **15th Floor** | : | |
| **Philadelphia, PA 19135** | : | |
| | : | |
| **APRIL SMALLWOOD** | : | |
| **C/o City Solicitor's Office** | : | |
| **One Parkway, 1515 Arch Street** | : | |
| **15th Floor** | : | |
| **Philadelphia, PA 19135** | : | |
| | : | |
| **LISA MCCALL** | : | |
| **C/o City Solicitor's Office** | : | |
| **One Parkway, 1515 Arch Street** | : | |
| **15th Floor** | : | |
| **Philadelphia, PA 19135** | : | |
| | : | |
| **TRIMARK CORP.** | : | |
| **500 Bailey Avenue** | : | |
| **P.O. Box 350** | : | |
| **New Hampton, IA 50659** | : | |

| VCI EMERGENCY VEHICLE SPECIALISTS | : |
| 43 Jefferson Avenue | : |
| Berlin, NJ 08009 | : |
| | : |
| HORTON EMERGENCY VEHICLES CO. | : |
| 3800 McDowell Road | : |
| Grove City, OH 43123 | : |
| | : |
| Defendants | : |

## NOTICE OF REMOVAL

**To the Honorable Judges of the United States District Court for the Eastern District of Pennsylvania.**

Pursuant to 28 U.S.C. § 1441, City of Philadelphia Defendants, (hereinafter "petitioners") through their counsel, Armando Brigandi, Divisional Deputy City Solicitor, respectfully petition for the removal of this action to the United States District Court for the Eastern District of Pennsylvania. In support thereof, defendants state the following:

1. In January, 2014, plaintiffs initiated this action by a Writ of Summons in the Court of Common Pleas in Philadelphia, January Term, 2014; No. 0028. (Exhibit A – Writ of Summons).

2. On July 24, 2014 said Complaint was served on Petitioners at 1515 Arch Street, 14th Floor, Philadelphia, Pennsylvania. (Exhibit B – Complaint)

3. Plaintiffs' allege that on or about October 1, 2012 they sustained damages when the plaintiffs' civil rights were violated by the defendants. (Exhibit B – Complaint, Counts VII-VIII).

4. This action may be removed to this Court pursuant to 28 U.S.C. § 1441 since Plaintiff's Complaint contains allegations of violations of the plaintiff's Federal Civil Rights and seeks relief under 42 U.S.C. § 1983. (Exhibit B-Complaint, Counts VII-VIII)

**Wherefore,** petitioners, City of Philadelphia Defendants, respectfully request that the captioned Complaint be removed to the United States District Court for the Eastern District of Pennsylvania.

Respectfully submitted,

Craig M. Straw
Chief Deputy City Solicitor


**ARMANDO BRIGANDI**
**Divisional Deputy City Solicitor**
**Attorney I.D. No. 92208**
1515 Arch Street, 14th Floor
Philadelphia, PA  19102
215-683-5381


**Date:  July 24, 2014**

# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIBERTO RODRIGUEZ, as Administrator of the** | : | Civil Action |
| **ESTATE OF JOANNE RODRIGUEZ, Deceased,** | : | |
| **4079 Creston Street** | : | NO: _____ |
| **Philadelphia, PA 19255** | : | |
| | : | |
| **XAVIER RODRIGUEZ, a Minor, by ERIBERTO** | : | |
| **RODRIGUEZ, Natural Parent and Guardian, and by** | : | |
| **DAISY MORALES, and as Maternal Grandmother and** | : | *Formerly* |
| **Co-Legal Guardian** | : | **Court of Common Pleas** |
| **2833 N. 9th Street** | : | **Philadelphia County** |
| **Philadelphia, PA 19133** | : | |
| | : | **January Term, 2014** |
| **DAISY MORALES, individually** | : | |
| **2833 N. 9th Street** | : | No. 140100028 |
| **Philadelphia, PA 19133** | : | |
| | : | *Jury Trial Demanded* |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA** | : | |
| **City Solicitor's Office** | : | |
| **One Parkway, 1515 Arch Street** | : | |
| **15th Floor** | : | |
| **Philadelphia, PA 19135** | : | |
| | : | |
| **PHILADELPHIA FIRE DEPARTMENT** | : | |
| **EMERGENCY MEDICAL SERVICES** | : | |
| **C/o City Solicitor's Office** | : | |
| **One Parkway, 1515 Arch Street** | : | |
| **15th Floor** | : | |
| **Philadelphia, PA 19135** | : | |
| | : | |
| **APRIL SMALLWOOD** | : | |
| **C/o City Solicitor's Office** | : | |
| **One Parkway, 1515 Arch Street** | : | |
| **15th Floor** | : | |
| **Philadelphia, PA 19135** | : | |
| | : | |
| **LISA MCCALL** | : | |
| **C/o City Solicitor's Office** | : | |
| **One Parkway, 1515 Arch Street** | : | |
| **15th Floor** | : | |
| **Philadelphia, PA 19135** | : | |
| | : | |
| **TRIMARK CORP.** | : | |
| **500 Bailey Avenue** | : | |
| **P.O. Box 350** | : | |
| **New Hampton, IA 50659** | : | |

| | |
|---|---|
| **VCI EMERGENCY VEHICLE SPECIALISTS** | : |
| 43 Jefferson Avenue | : |
| Berlin, NJ 08009 | : |
| | : |
| | : |
| **HORTON EMERGENCY VEHICLES CO.** | : |
| 3800 McDowell Road | : |
| Grove City, OH 43123 | : |
| | : |
| Defendants | : |

---

## NOTICE OF FILING OF REMOVAL

TO:   Royce W. Smith, Esquire
        MINCEY & FITZPATRICK, LLC
        Two Penn Center
        1500 JFK Boulevard, Suite 1525
        Philadelphia, PA 19103

PLEASE TAKE NOTICE THAT on July 24, 2014, City Defendants filed, in the office of the Clerk of the United States District Court for the Eastern District of Pennsylvania a verified Notice of Removal.

A copy of this Notice of Removal is attached hereto and is also being filed with the Clerk of the Court of Common Pleas of Philadelphia County, pursuant to Title 28, United States Code, Section 1446(e).

**ARMANDO BRIGANDI**
**Divisional Deputy City Solicitor**
**Attorney I.D. No. 92208**
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA  19102
215-683-5381

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIBERTO RODRIGUEZ, as Administrator of the ESTATE of JOANNE RODRIGUEZ, Deceased, 4079 Creston Street Philadelphia, PA 19135 | : : : : : | Civil Action<br><br>NO: _____ |
| XAVIER RODRIGUEZ, a Minor, by ERIBERTO RODRIGUEZ, Natural Parent and Guardian, and by DAISY MORALES, and as Maternal Grandmother and Co-Legal Guardian 2833 N. 9th Street Philadelphia, PA 19133 | : : : : : : | *Formerly*<br>**Court of Common Pleas Philadelphia County**<br>**January Term, 2014** |
| DAISY MORALES, individually 2833 N. 9th Street Philadelphia, PA 19133 | : : : | No. 140100028 |
| Plaintiff | : : : | *Jury Trial Demanded* |
| v. | : : : | |
| CITY OF PHILADELPHIA City Solicitor's Office One Parkway, 1515 Arch Street 15th Floor Philadelphia, PA 19135 | : : : : : : | |
| PHILADELPHIA FIRE DEPARTMENT EMERGENCY MEDICAL SERVICES C/o City Solicitor's Office One Parkway, 1515 Arch Street 15th Floor Philadelphia, PA 19135 | : : : : : : | |
| APRIL SMALLWOOD C/o City Solicitor's Office One Parkway, 1515 Arch Street 15th Floor Philadelphia, PA 19135 | : : : : : : | |
| LISA MCCALL C/o City Solicitor's Office One Parkway, 1515 Arch Street 15th Floor Philadelphia, PA 19135 | : : : : : : | |
| TRIMARK CORP. 500 Bailey Avenue P.O. Box 350 | : : : | |

New Hampton, IA 50659                                    :
                                                         :
**VCI EMERGENCY VEHICLE SPECIALISTS**                    :
**43 Jefferson Avenue**                                  :
**Berlin, NJ 08009**                                     :
                                                         :
**HORTON EMERGENCY VEHICLES CO.**                        :
**3800 McDowell Road**                                   :
**Grove City, OH 43123**                                 :
                                                         :
                        Defendants                       :
                                                         :

---

### CERTIFICATE OF SERVICE

    I, Armando Brigandi, Divisional Deputy City Solicitor, do hereby certify that a true and correct copy of the attached Notice of Removal has been served upon the following by First Class Mail, postpaid, on the date indicated below:


TO:    Royce W. Smith, Esquire
       MINCEY & FITZPATRICK, LLC
       Two Penn Center
       1500 JFK Boulevard, Suite 1525
       Philadelphia, PA 19103


                        **ARMANDO BRIGANDI**
                        **Divisional Deputy City Solicitor**
                        **Attorney ID No. 92208**
                        City of Philadelphia Law Department
                        1515 Arch Street, 14th Floor
                        Philadelphia, PA  19102
                        215-683-5381

Date: 7/24/14

Exhibit "A"

FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK & DODIG, LLP
By: Royce W. Smith
Identification No.: 201295
21st Floor
1845 Walnut Street
Philadelphia, PA 19103
(215) 567-8300

Attorneys for Plaintiffs

Filed and Attested by
PROTHONOTARY
06 FEB 2014 04:40 pm
J. OSTROWSKI

| | |
|---|---|
| ERIBERTO RODRIGUEZ, as Administrator of the Estate of Joanne Rodriguez, deceased<br>4079 Creston Street<br>Philadelphia, PA 19135<br>Plaintiff<br><br>v.<br><br>CITY OF PHILADELPHIA<br>City Solicitor's Office<br>One Parkway, 1515 Arch Street<br>15th Floor<br>Philadelphia, Pa 19135<br><br>Defendant | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>JANUARY TERM, 2014<br><br>No. 000028<br><br>Jury Trial Demanded |

## PRAECIPE TO REISSUE WRIT OF SUMMONS

TO THE PROTHONOTARY:

Kindly reinstate the Writ of Summon regarding the above-captioned matter.

FELDMAN, SHEPHERD, WOHLGELERNTER,
TANNER, WEINSTOCK & DODIG, LLP

/s/ Royce W. Smith
ROYCE W. SMITH, ESQUIRE
Attorney for Plaintiffs

Date: February 6, 2014

Case ID: 140100028

C.P.97

# Commonwealth of Pennsylvania

## CITY AND COUNTY OF PHILADELPHIA

SUMMONS
*CITACION*

ERIBERTO RODRIGUEZ, As Administrator
of the Estate of Joanne Rodriguez, deceased

COURT OF COMMON PLEAS *Attested by*
PROTHONOTARY
02 JAN 2014  04:33 pm
J. MURPHY

No. _____

*vs.*

CITY OF PHILADELPHIA
City Solicitor's Office
One Parkway 1515 Arch Street 15th Floor
Philadelphia, PA 19102

To[1]

CITY OF PHILADELPHIA

You are notified that the Plaintiff[2]
*Usted esta avisado que el demandante[2]*

Eriberto Rodriguez, As Administrator of the Estate of Joanne Rodriguez, deceased

Has (have) commenced an action against you.
*Ha (han) iniciado una accion en contra suya.*



JOSEPH H. EVERS
*Prothonotary*

By _____

140100028
06 FEB 2014 04:40 pm
J. OSTROWSKI

Date ___January 2, 2014___

[1] Name(s) of Defendant(s)
[2] Name(s) of Plaintiff(s)

10-208 (Rev. 6/00)

Case ID: 140100028

COURT OF COMMON PLEAS

_____ Term, 20 ____ No. ____

ERIBERTO RODRIGUEZ, As Administrator
of the Estate of Joanne Rodriguez, deceased

vs.

CITY OF PHILADELPHIA
City Solicitor's Office
One Parkway 1515 Arch Street 15th Floor
Philadelphia, PA 19102

SUMMONS

Case ID: 140100028

Exhibit "B"

MINCEY & FITZPATRICK LLC
By: Royce W. Smith
Identification No.: 201295                        **Attorneys for Plaintiffs**
Two Penn Center
1500 JFK Boulevard, Suite 1525
Philadelphia, PA 19103
(215) 587-0006

| | |
|---|---|
| ERIBERTO RODRIGUEZ, as Administrator of the ESTATE of JOANNE RODRIGUEZ, Deceased, 4079 Creston Street Philadelphia, PA 19135 <br><br> XAVIER RODRIGUEZ, a Minor, by ERIBETO RODRIGUEZ, Natural Parent and Guardian, and by DAISY MORALES, and as Maternal Grandmother and Co-Legal Guardian 2833 N. 9th Street Philadelphia, PA 19133 <br><br> DAISY MORALES, individually 2833 N. 9th Street Philadelphia, PA 19133 <br><br>        Plaintiff <br>      v. <br><br> CITY OF PHILADELPHIA City Solicitor's Office One Parkway, 1515 Arch Street 15th Floor Philadelphia, Pa 19135 <br><br> PHILADELPHIA FIRE DEPARTMENT EMERGENCY MEDICAL SERVICES C/o City Solicitor's Office One Parkway, 1515 Arch Street 15th Floor Philadelphia, Pa 19135 <br><br> APRIL SMALLWOOD C/o City Solicitor's Office One Parkway, 1515 Arch Street 15th Floor Philadelphia, Pa 19135 <br><br> LISA MCCALL C/o City Solicitor's Office | COURT OF COMMON PLEAS PHILADELPHIA COUNTY <br><br> JANUARY TERM, 2014 <br><br> No. 140100028 <br><br> *Jury Trial Demanded* |

One Parkway, 1515 Arch Street
15th Floor
Philadelphia, Pa 19135

TRIMARK CORP.
500 Bailey Avenue
P.O. Box 350
New Hampton, IA 50659

VCI EMERGENCY VEHICLE SPECIALISTS
43 Jefferson Avenue
Berlin, NJ 08009

HORTON EMERGENCY VEHICLES CO.
3800 McDowell Road
Grove City, OH 43123

    Defendants

## NOTICE TO PLEAD

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION SERVICE
One Reading Center
Philadelphia, Pennsylvania 19107
Telephone: 215-238-6333 TTY: 215-451-6197

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguien-tes, usted tiene viente (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparesencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demande. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFFICIENTE DE PAGAR RAL SERVCIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACION DE LICENCIADOS DE FILADELFIA
SERVICO DE REFERENCIA E INFORMACION LEGAL
One Reading Center
Filadelfia, Pennsylvania 19107
Telefone: 215-238-6333   TTY: 215-451-8197

2

MINCEY & FITZPATRICK LLC
By: Royce W. Smith
Identification No.: 201295                                   Attorneys for Plaintiffs
Two Penn Center
1500 JFK Boulevard, Suite 1525
Philadelphia, PA 19103
(215) 587-0006

| | |
|---|---|
| ERIBERTO RODRIGUEZ, as Administrator of the ESTATE of JOANNE RODRIGUEZ, Deceased, 4079 Creston Street Philadelphia, PA 19135 | COURT OF COMMON PLEAS PHILADELPHIA COUNTY JANUARY TERM, 2014 |
| XAVIER RODRIGUEZ, a Minor, by ERIBETO RODRIGUEZ, Natural Parent and Guardian, and by DAISY MORALES, as Maternal Grandmother and Co-Legal Guardian 2833 N. 9th Street Philadelphia, PA 19133 | No. 140100028 *Jury Trial Demanded* |
| DAISY MORALES, individually 2833 N. 9th Street Philadelphia, PA 19133 | |
| Plaintiff v. | |
| CITY OF PHILADELPHIA City Solicitor's Office One Parkway, 1515 Arch Street 15th Floor Philadelphia, Pa 19135 | |
| PHILADELPHIA FIRE DEPARTMENT EMERGENCY MEDICAL SERVICES C/o City Solicitor's Office One Parkway, 1515 Arch Street 15th Floor Philadelphia, Pa 19135 | |
| APRIL SMALLWOOD C/o City Solicitor's Office One Parkway, 1515 Arch Street 15th Floor Philadelphia, Pa 19135 | |
| LISA MCCALL C/o City Solicitor's Office | |

One Parkway, 1515 Arch Street
15th Floor
Philadelphia, Pa 19135

TRIMARK CORP.
500 Bailey Avenue
P.O. Box 350
New Hampton, IA 50659

VCI EMERGENCY VEHICLE SPECIALISTS
43 Jefferson Avenue
Berlin, NJ 08009

HORTON EMERGENCY VEHICLES CO.
3800 McDowell Road
Grove City, OH 43123

       Defendants

## CIVIL ACTION COMPLAINT
## MEDICAL MALPRACTICE, CIVIL RIGHTS & PRODUCT LIABILITY

Plaintiffs, Eribeto Rodriguez, as Administrator of the Estate of Joanne Rodriguez, Deceased; Xavier Rodriguez, a Minor, by Eribeto Rodriguez, the Natural Parent and Guardian of Xavier Rodriguez, and Daisy Morales, as Maternal Grandmother and Co-Legal Guardian of Xavier Rodriguez; and Daisy Morales individually, by and through her undersigned attorneys, Royce W. Smith and the law firm of Mincey & Fitzpatrick, LLC, say by way of Complaint against all Defendants the following:

### SUMMARY

1.     This wrongful death and infant brain injury case arises from a series of reckless acts, thoughtless omissions, and defective emergency medical equipment, during the emergency medical care provided to Joanne Rodriguez, and her posthumously born son, Xavier Rodriguez. Joanne Rodriguez, 24 years old and 36-37 weeks pregnant, died on October 1, 2012,

2

immediately following transport from her home to Temple Hospital. Earlier that morning, she was in her family home when she fell nearby the steps in her parents' home. Her family called 911 and told them that Joanne was 36 weeks pregnant, she had fallen, and she had a medical history that included Lovenox injections. Paramedics arrived but failed to bring any oxygenation equipment or any transportation devices into the home. Ultimately, as verified by home security cameras, the paramedics took approximately 18 minutes to physically remove Joanne from the house and begin oxygenating her. As the ambulance arrived to Temple Hospital, the paramedics were unable to open the ambulance doors because the doors were jammed in a locked position. For a period of several minutes, the paramedics, police officer(s), and helping hands from the Emergency Room failed to successfully pry open the doors. After a matter of minutes, the jammed doors were opened and Joanne and her baby were brought inside Temple Hospital. Joanne went into cardiac arrest shortly thereafter and passed away. Her son, Xavier, was born via emergency caesarian section, and sustained brain damage due to a deprivation of oxygen. He is currently living at home but is catastrophically and permanently brain damaged.

2.      After a 2.5 month long investigation, the City of Philadelphia and the Philadelphia Fire Department ("PFD") suspended the two paramedics involved, after citing them for:

    a.   Neglect;
    b.   Conduct unbecoming;
    c.   Little or no regard for his/her responsibility as a member of the Fire Dept;
    d.   Failure to perform duties to the best of your ability;
    e.   Failure to uphold the Oath of Office;
    f.   Failure to comply with Orders/Protocols;
    g.   Disobedience of Orders

3.      Further, TriMark Corporation, the manufacturer of the ambulance door lock mechanism inspected the unit and determined that the power lock actuator failed in the "door lock" portion of the system.

3

## PARTIES

4.     Plaintiff, Eriberto Rodriguez, is the widower of Joanne Rodriguez, is a citizen of the Commonwealth of Pennsylvania, and resides at 4079 Creston Street, Philadelphia, PA 19135.

5.     Plaintiff, Eriberto Rodriguez, was duly appointed the Administrator of the Estate of Joanne Rodriguez, Deceased on February 26, 2013, by the Register for the Probate of Wills and Grant of Letters Testamentary and of Administration, in and for the County of Philadelphia, in the Commonwealth of Pennsylvania.

6.     Xavier Rodriguez, a Minor, was born on October 1, 2012, is a citizen of the Commonwealth of Pennsylvania, and is natural born son of Plaintiff Eriberto Rodriguez and decedent Joanne Rodriguez, who resides at 2833 North 9th Street, Philadelphia, PA 19133.

7.     Plaintiff, Daisy Morales, is a citizen of the Commonwealth of Pennsylvania, resides at 2833 North 9th Street, Philadelphia, PA 19133, is the maternal grandmother of Xavier Rodriguez and his Co-Legal Guardian.

8.     Plaintiff Eriberto Rodriguez and Plaintiff Daisy Morales share legal custody and physical custody of Xavier Rodriguez.

9.     Defendant City of Philadelphia, at all times pertinent hereto, was a corporate or other jural entity that was organized and existing under the laws of the Commonwealth of Pennsylvania, with an principle place of business at City Solicitor's Office, One Parkway, 1515 Arch Street, 15th Floor, Philadelphia, PA 19135, who was licensed, certified, or otherwise engaged in the practice of emergency medical services and transport.  Plaintiff is asserting a professional liability claim against this Defendant.

10.     Defendant Philadelphia Fire Department Emergency Medical Services, at all times pertinent hereto, was a corporate or other jural entity that was organized and existing under

the laws of the Commonwealth of Pennsylvania, with an principle place of business at City Solicitor's Office, One Parkway, 1515 Arch Street, 15th Floor, Philadelphia, PA 19135, who was licensed, certified, or otherwise engaged in the practice of emergency medical services and transport. Plaintiff is asserting a professional liability claim against this Defendant.

11.     Defendant April Smallwood, at all times pertinent hereto, was a citizen of the Commonwealth of Pennsylvania, an agent, ostensible agent, servant and/or employee of Defendant City of Philadelphia and/or Defendant Philadelphia Fire Department Emergency Medical Services, with an principle place of business at City Solicitor's Office, One Parkway, 1515 Arch Street, 15th Floor, Philadelphia, PA 19135, who was licensed, certified, or otherwise engaged in the practice of emergency medical services and transport on behalf of Defendant City of Philadelphia and/or Defendant Philadelphia Fire Department Emergency Medical Services. Plaintiff is asserting a professional liability claim against this Defendant.

12.     Defendant Lisa McCall, at all times pertinent hereto, was a citizen of the Commonwealth of Pennsylvania, an agent, ostensible agent, servant and/or employee of Defendant City of Philadelphia and/or Defendant Philadelphia Fire Department Emergency Medical Services, with an principle place of business at City Solicitor's Office, One Parkway, 1515 Arch Street, 15th Floor, Philadelphia, PA 19135, who was licensed, certified, or otherwise engaged in the practice of emergency medical services and transport on behalf of Defendant City of Philadelphia and/or Defendant Philadelphia Fire Department Emergency Medical Services. Plaintiff is asserting a professional liability claim against this Defendant.

13.     Defendant Trimark Corporation, at all times pertinent hereto, was a corporate or other jural entity, with a principle place of business at 500 Bailey Avenue, P.O. Box 350, New Hampton, IA 50659, and was engaged in the business of designing, manufacturing, creating,

5

building, installing, marketing, advertising, selling, distributing, supplying, inspecting, maintaining, servicing, repairing, improving, and retrofitting hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and complete door access systems and door lock mechanisms for various types of automotive vehicles including emergency transport vehicles and ambulances, and including the ambulance referred to herein as Medic Unit 22 or M22, with manuals, instructions and warnings and other literature pertaining to the operation of said hardware, and transacts business and derive substantial revenues from business within the Commonwealth of Pennsylvania, City and County of Philadelphia, and is susceptible to the jurisdiction of the Court.

     14.    Defendant VCI Emergency Vehicle Specialists, at all times pertinent hereto, was a corporate or other jural entity, with a principle place of business at 43 Jefferson Avenue, Berlin, NJ 08009, and was engaged in the business of designing, manufacturing, creating, building, installing, marketing, advertising, selling, distributing, supplying, inspecting, maintaining, servicing, repairing, improving, and retrofitting emergency transport vehicles and ambulances, and including the ambulance referred to herein as Medic Unit 22 or M22, and any and all of its power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and complete door access systems and door lock mechanisms, with manuals, instructions and warnings and other literature pertaining to the operation of said hardware, and transacts business and derive substantial revenues from business within the Commonwealth of Pennsylvania, City and County of Philadelphia, and is susceptible to the jurisdiction of the Court.

     15.    Defendant Horton Emergency Vehicles Company, at all times pertinent hereto, was a corporate or other jural entity, with a principle place of business at 3800 McDowell Road, Grove City, OH 43123, and was engaged in the business of designing, manufacturing, creating,

building, installing, marketing, advertising, selling, distributing, supplying, inspecting, maintaining, servicing, repairing, improving, and retrofitting emergency transport vehicles and ambulances, and including the ambulance referred to herein as Medic Unit 22 or M22, and any and all of its power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and complete door access systems and door lock mechanisms, with manuals, instructions and warnings and other literature pertaining to the operation of said hardware, and transacts business and derive substantial revenues from business within the Commonwealth of Pennsylvania, City and County of Philadelphia, and is susceptible to the jurisdiction of the Court.

      16.    At all times relevant hereto, the Defendants Defendant City of Philadelphia, Defendant Philadelphia Fire Department Emergency Medical Services, April Smallwood, and/or Lisa McCall were acting under the color of the law, to wit, under the color of statutes, regulations, policies, customs and usages of the state of Pennsylvania.

      17.    At all relevant times hereto, Defendants named above acted individually and/or by and through their duly authorized, actual and/or apparent agents, servants and employees acting within the course and scope of their actual and/or apparent authority, agency and/or employment. These agents, employees, and ostensible agents, are specifically identified in the Defendants own records, and have expressly identified themselves therein by virtue of their initials, signatures, or other identifying designations in accordance with the Defendant's own policies and protocols, such that the Defendants are in a superior position to specifically identify these caregivers at this time. These signatures and initials are not sufficient to permit plaintiff to further specifically identify these persons at this time, absent discovery. Any negligent act or omission committed by any actual, apparent and/or ostensible agents, servants and employees of the Defendants imposes liability upon the Defendants.

7

18.     All engineers, designers, installers, servicemen, repairmen, inspectors, and other professional and nonprofessional personnel who cared for Plaintiff's decedent, Joanne Rodriguez, and Xavier Rodriuez, a Minor, while they were under the care of Defendants were acting as the duly authorized actual and/or apparent agents, servants and employees of Defendants, acting within the course and scope of their actual and/or apparent authority, agency and/or employment.

19.     All engineers, designers, installers, servicemen, repairmen, inspectors, and other professional and nonprofessional personnel who cared for Plaintiff's decedent, Joanne Rodriguez, and Xavier Rodriuez, a Minor, while they were under the care of Defendants and/or subject to the use of Defendants products, including but not limited to the ambulance referred to herein as Medic Unit 22 or M22, and any and all of its power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and complete door access systems door lock mechanisms, were acting as the duly authorized actual and/or apparent agents, servants and employees of Defendants, acting within the course and scope of their actual and/or apparent authority, agency and/or employment.

## OPERATIVE FACTS

### I.     EMERGENCY RESPONSE & TRANSPORT

20.     On October 1, 2012 Joanne Rodriguez was 24 years old and 36-37 weeks pregnant with her first-born child.

21.     Shortly before or around 10:44 a.m., Joanne Rodriguez accidentally fell near or fell down a few steps in her parents' home at 2833 N. 9th Street, in Philadelphia.

22.     At approximately 10:44 a.m., concerned family members placed a call to 911 requesting a medic unit at 2833 N. 9th Street.

8

23.     The caller(s) reported there was a 24-year-old woman who was 36 weeks pregnant who had fallen and had a medical history that included lovenox injections.

24.     At or around the same time, Defendant Lisa McCall and Defendant April Smallwood were staffed in Medic Unit 22 ("M22").

25.     At approximately 10:46 a.m., Medical Unit 22 was dispatched to 2833 N. 9th Street for a trauma response.

26.     At approximately 10:47 a.m., Medic Unit 22 was en route.

27.     By approximately 10:49 a.m., Medic Unit 22 arrived at 2833 N. 9th Street.

28.     At approximately 10:50 a.m., Defendants McCall and Smallwood came in contact with the patient Joanne Rodriguez.

29.     When Defendants McCall and Smallwood arrived Joanne Rodriguez was laying on the floor of her family's home.  She stated she felt weak and could not breathe.

30.     Members of Joanne Rodriguez's family were gathered at the house at 2833 N. 9th Street.

31.     Plaintiff Daisy Morales reported to Defendants McCall and Smallwood that her daughter Joanne Rodriguez had a history of blood clots and asthma and that she was being seen weekly by her physician and receiving Lovenox injections.

32.     Members of Joanne Rodriguez's family explained to Defendants Smallwood and McCall that they heard a thump and realized Joanne Rodriguez had fallen and found her by the stairs.  They observed that Joanne Rodriguez was having difficulty breathing and her family also reported chest pain.  The family also described Joanne Rodriguez's prior medical history, which included treatment for deep vein thrombosis during her pregnancy.

33.     According to City of Philadelphia records and upon information and belief, Defendants McCall and Smallwood did not provide Joanne Rodriguez with oxygen or assist in her oxygenation until they brought her outside of the resident and near or inside Medic Unit 22.

34.     According to City of Philadelphia records, and upon information and belief, when Defendants McCall and Smallwood arrived to the scene they each failed to retrieve the required equipment and carrying device from the medic unit prior to entering the residence.  Upon entering the residence Joanne Rodriguez was complaining of difficulty breathing associated with chest pain.  Defendants McCall and Smallwood were unable to perform a thorough patient assessment and failed to provide appropriate treatment to Joanne Rodriguez as they failed to bring in the required equipment into the residence.  Security surveillance footage verified that Defendants McCall and Smallwood entered the residence without any equipment and Defendants later admitted such in post-event interviews with the City of Philadelphia's special investigations officer.

35.     According to City of Philadelphia records and upon information and belief, EMS Procedure 13, Pennsylvania Statewide Advanced Life Support Protocols, Appendix E Skills Manual for Paramedics, S.52, Patient Assessment states the following:  Upon arrival at the scene an initial, focused and ongoing patient assessment shall be performed and care shall be initiated based upon the appropriate procedures contained in the protocols.  Defendants' duty to the patient begins when the patient-encounter begins.  This is when Defendants should begin their assessment.  This includes obtaining a history, determining vital signs, examining the patient, and reaching a tentative diagnosis of the patient's medical emergency.  This is also when Defendants should reach a conclusion about whether the patient is stable or unstable and, when indicated, initiate appropriate care.

36.     According to City of Philadelphia records, and upon information and belief, it is almost never appropriate to move a critically-ill patient, or a patient who has the potential to rapidly deteriorate, to the medic unit without first performing an assessment and initiating treatment.  In order to perform an assessment at the patient's side and initiate care, Defendants must bring their equipment with them to the patient.  Returning to the Medic Unit to get equipment after Defendants have determined that they are dealing with an unstable patient wastes precious time.

37.     According to City of Philadelphia records and upon information and belief, Basic Life Support Protocol, No. 201, Initial Patient Contact, requires that an initial assessment be performed for all patients, and No. 202, Oxygen Administration, provides criteria for administering oxygen to patients.  Paramedic Skills Manual S.60, Vital Signs, assessment, requires all patients have a full set of vital signs (pulse, respirations and blood pressure) be obtained and documented.  In addition, a pulse ox symmetry reading should be obtained on patients at risk of hypoxia or who are administered supplemental oxygen.

38.     Protocol #201, Initial Patient Contact, of the 2011 Pennsylvania Statewide Basic Life Support Protocols, which states: "Perform initial assessment.  (Form a general impression of the patient; determine the chief complaint and/or life threatening problems; determine responsiveness; assess airway and breathing; assess circulation.)...if priority condition exists administer high concentration oxygen, treat immediately, and transport with reassessment and treatment by applicable protocol while en route to the appropriate medical facility.  Section A priority conditions are:  1.  Unable to obtain open airway.  2.  Poor general impression.  3. Altered mental status and not following commands.  4.  Difficulty breathing/inadequate ventilation.

39.    Protocol #202, Oxygen Administration, of the 2011 Pennsylvania State-Wide Basic Life Support Protocols, states that criteria for oxygen administration are:  B.  Shortness of breath or respiratory distress.  G.  Acute change in level of consciousness.

40.    The EMT-Basic National Standard Curriculum states "for the pregnant patient with hypotension, an early intervention is to position the patient on her left side".  The rationale for this position is to avoid the supine hypotensive syndrome, in which the pregnant uterus blocks blood return to the heart, causing or worsening hypotension.

41.    The EMT-Basic National Standard Curriculum lists general management of the obstetric patient Section G left lateral recumbent after the 24th week, if not in active labor.

42.    According to City of Philadelphia records and upon information and belief, Defendants McCall and Smallwood failed to comply with Fire Department and Pennsylvania Department of Health policies.

43.    During various times inside the residence, as Joanne Rodriguez and her family explained that she could not breathe, was weak, and had difficulty moving, Defendants yelled "Do your part" "You need to sit up" and other instructions.

44.    Eventually, Defendants retrieved a stair chair from the ambulance, re-entered the residence, and placed Joanne Rodriguez on a stair chair.

45.    Shortly thereafter, Joanne Rodriguez, whose lips were pale, and whose body was essentially limp, was moved by Defendants Smallwood and McCall to the stretcher.

46.    Defendants needed assistance to carry and/or move Joanne Rodriguez from her father, Juan Cevallos, and Jose Tapia.

47.     Once Defendants brought Joanne Rodriguez to Medic Unit 22, she was placed flat on her back.  An oxygen mask was applied to her face mask at this time.  Approximately 1 minute later the patient was placed in the ambulance.

48.     According to City of Philadelphia records and upon information and belief, Defendants noted that Joanne Rodriguez's primary symptom was a breathing problem and other symptoms included breathing problems and pain.  Joanne Rodriguez's respiratory rate was noted to be labored and at 36.  Her pulse rate was noted at 150.  Her skin was pale and warm.  Her skin was later noted as pale, cool and clammy.  Her skin color was later noted as cyanotic.  Defendant Lisa McCall noted that she was unable to auscultate or palpate blood pressure after numerous attempts.  Defendant April Smallwood noted a 12-lead EKG was obtained sinus tachycardia was noted.

49.     A 20G IV was attempted in the right hand by Defendant Smallwood with success.  NS 500 cc bag was run at TKO with a 10 GTT.  Blood was not drawn.

50.     At approximately 11:06 or 11:07 a.m., Medic Unit 22 departed en route to Temple University Hospital in Philadelphia.   Defendants McCall and Smallwood departed the location with Joanne Rodriguez and her mother Daisy Morales in the ambulance.

51.     At or around the same time, Defendants McCall and/or Smallwood verbally requested that the dispatcher haste the hospital because they have a 24-year-old female, 36 weeks pregnant with unstable vitals who has yet to deliver.  They estimated their time of arrival to Temple Hospital at five minutes.

52.     At approximately 11:08 a.m., the north medic ban dispatcher asks Medic Unit 22 if the patient's status was precipitated from a fall. Defendants McCall and/or Smallwood responded that there is no fall here we have syncope and unstable vitals this is a medical alert.

53.     At approximately 11:08 a.m., a haste alert was sent to Temple University Hospital stating, "attention Temple Hospital emergency room.  M22 is en route Class 1A 22F syncopal episode, 36 weeks pregnant, unstable vitals has not delivered, ETA 5 minutes repeated...."

54.     At approximately 11:09 a.m., the patient is classified as "C1A" in CAD.

55.     At or around the time when Medic Unit 22 arrived to Temple University Hospital, Joanne Rodriguez became unresponsive and apneic.

56.     At or around this time Joanne Rodriguez began to code.

57.     In sum, approximately 17-18 minutes elapsed between the first time Defendants McCall and Smallwood had contact with patient Joanne Rodriguez and the time they departed the residence.  Approximately 20-21 minutes elapsed between first contact and arrival to Temple Hospital.

## II.     AMBULANCE DOOR LOCK DEFECT

58.     At approximately 11:10 a.m., upon arriving to Temple University Hospital Defendants McCall and Smallwood were unable to open the rear door to Medic Unit 22.

59.     Despite numerous attempts by Defendants McCall and Smallwood they could not open the rear door.

60.     According to Temple Hospital security footage, and upon information and belief, as Medic Unit 22 backed in to a parking space between two parked units a person identifiable as Defendant Smallwood appears to be moving from the driver's side of the newly-arrived unit and attempting to open the rear doors of the unit.  After being unable to open the doors Defendant Smallwood is seen attempting to use the electronic key pad to unlock the doors but yet again was unsuccessful.

14

61.    Defendants McCall and Smallwood placed calls from within the ambulance for assistance from the emergency room, police and security.

62.    Multiple people made attempts to assist Defendants McCall and Smallwood with opening the ambulance doors so that Joanne Rodriguez and her baby could receive necessary emergency treatment.

63.    An unidentified PFD member approaches from Medic Unit 25 and attempts to open the doors but fails to do so.

64.    At approximately 11:11 a.m., a civilian male in a grey Temple Hospital environmental services shirt exits the emergency department doors.  He was purportedly standing outside the doors for a few seconds and begins to turn back inside.  Defendant Smallwood speaks and gestures to him and this civilian male moves back into the emergency department doors with apparent haste.

65.    At approximately 11:12 a.m., two Temple Hospital staff members in gowns and gloves exit the emergency department and are immediately met by Defendant Smallwood and moved to the passenger side of Medic Unit 22.

66.    At approximately 11:12 a.m., seven additional staff members exit the emergency department and move to the passenger side of Medic Unit 22.

67.    Two of these individuals immediately return to the emergency department and return to the unit with a hospital stretcher.

68.    At approximately 11:13 a.m., two Philadelphia police officers appear on the scene.

69.    One of these officers succeeds and opens the rear doors at approximately 11:13:45 a.m.

15

70.     In a statement Philadelphia Police Officer Marcus Salas stated "I was at the hospital under prisoner detail. I stepped out to grab a smoke. On the way back inside while walking past the rear of the rescue I noticed a commotion. I remember that when I was sitting in the wagon seeing two ER people come out and get in the side door of the unit. I saw Smallwood talking on the radio in the cab. I went around back and she said 'I can't get the door open. She's coding.' I tried the door...nothing. I tried again, again nothing. The third time I went back and forth and got it open. They got her right out and that was it."

71.     In a separate statement Officer Salas stated "I was on a hospital detail at Temple Hospital and I was outside smoking a cigarette. I was sitting in EPW 2500 when I heard screaming and yelling outside. I got out to see what was going on and a medic told me that the door was stuck on the medic unit and that the patient inside was coding. I pulled on the door once and it wouldn't open. I tried pulling on it again and it wouldn't open. I then used two hands and put my foot on the rear bumper and pulled on the door for approximately 30 seconds and then the door opened. When the door opened I saw two people from the ER, one medic and the patient inside the medic unit. All three people were doing chest compressions on the patient. The medic who I first saw outside the medic unit called for fire rescue and also was asking for help from people inside the hospital. They eventually took the patient inside the ER at Temple Hospital and they were still performing chest compressions."

72.     At approximately 11:14 Joanne Rodriguez is removed from Medic Unit 22 on the stretcher via the rear doors. CPR is in progress from a Temple staff member and the patient is being ventilated via BVM by a Temple staff member. The patient is taken into the emergency department doors.

### III.   XAVIER RODRIGUEZ IS BORN

73.    While CPR was performed on Joanne Rodriguez, Temple University physicians and nurses attempted an emergency Cesarean section in order to save Xavier Rodriguez.

74.    At approximately 11:18 a.m., Xavier Rodriguez was delivered in Trauma Room 2 by emergency Cesarean section.

75.    On presentation, Xavier was noted to have appeared grey, not breathing, and not moving.

76.    He was placed on a warmer and CPR was initiated.  As of 11:19 he had no pulse. At 11:20 he was intubated orally with a 3.0 ETT taped 6 at the lip.  No pulses.  CPR continued. At 11:21 the ETT was readjusted to 9 at the lip.  His heart rate was measured at 80 beats per minute.  He was bagged with respiratory.

77.    Upon arrival of the neonatal team, Xavier was receiving chest compressions and bag mask ventilation.  Xavier was then intubated with a 3.0 endotracheal tube.

78.    The heart rate was assessed to be 80 at approximately 2 minutes of life.

79.    APGAR scores were 1 at 1 minute, 2 at 5 minutes and 3 at 10 minutes and 3 at 15 minutes.

80.    Xavier was transported to the infant intensive care unit in a transport isolette with an occasional gasp versus seizure activity noted.

81.    The initial impression of Xavier Rodriguez was a 36-week AGA male born by emergency Cesarean section in the emergency room to a mother in cardiac arrest.  His status post necessitation with an endotracheal tube ventilation and epinephrine.  The infant was with evidence of severe encephalopathy with no spontaneous activity and probable seizure activity

and there was a metabolic acidosis.  The infant was loaded with phenovarvital for suspected

seizure activity and given sodium bicarbonate for metabolic acidosis.

## IV.    CITY OF PHILADELPHIA CONDUCTS AN INVESTIGATION

82.    All Defendants conducted an investigation into the events described herein.

83.    Upon being asked whether it is protocol to walk into any type of medical call

without medical equipment, Fire Department Commissioner Lloyd Ayers told NBC News, "We

have protocols.  Normally when working with the doctors you would see someone walk in with

their bag and that type of thing."  Ayyers also stated: "We want to give people oxygen if they're

having difficulty breathing immediately and that's one of the things we are looking at as well."

Regarding the ambulance doors, City Public Safety Director Michael Resnick stated to NBC

News, "When they fail, you just can't open the door automatically.  You have to lift the button

up and open the door.  This one failed catastrophically.  We don't know why yet."

84.    Defendants Smallwood and McCall were issued performance reports by the City

of Philadelphia and/or Philadelphia Fire Department on December 19, 2012.  The reports state

that Defendants Smallwood and McCall were charged with and suspended for the following

violations:  conduct unbecoming a member, neglect of duty, disobedience of orders.  They were

rated unsatisfactory on the following categories:

- Quality of medic duty – ability as a paramedic; effort to do a good job on all
  EMS responses.

- Knowledge – extent of knowledge of methods, tools, equipment and
  departmental protocols, policies and procedures.

- Skills proficiency – demonstrates all ALS and BLS skills to a satisfactory
  level prescribed by the medical director.

- Dependability – consistently accomplishes desired actions with minimum
  supervision.

- Initiative – self-reliance, resourcefulness, willingness and ability to accept and carry out responsibility.

- Attitude – enthusiasm – motivates others by his/her passion; reflects interest in his/her job; accepts orders willingly.

- Adaptability – adjust to new or changing situations and stress; remains professional under pressure.

See Ex. A.

85.     Defendants Smallwood and McCall were charged by Defendant City of Philadelphia and/or Philadelphia Fire Department with the following charges:   Violation #1 conduct unbecoming a member Specification 1: 18.  Conduct indicating that a member has little or no regard for his/her responsibility as a member of the fire department.  Violation #2 – neglect of duty.  Specification 4:01 failure to perform duties to the bet of your ability.  Specification 4:02 failure to uphold the oath of office, fire department.  Specification 4:06 failure to comply with any order, directive, regulation, etc., verbal or written (EMS Procedure 13, PA Statewide ALS Protocols, Appendix E, Skills Manual, and EMS Procedure 21, PA Statewide BLS Protocols). Violation #3 – disobedience of orders.  Specification 5:41 failure to comply with any order, directive, regulation, etc., verbal or written (EMS Procedure 13, PA Statewide ALS Protocols, Appendix E, Skills Manual, and EMS Procedure 21, PA Statewide BLS Protocols).  On or about December 13, 2012 Defendants McCall and Smallwood were notified that were suspended without pay from their positions for a period of 48 hours covering the period from 0800 hours January 7, 2013 to 2000 hours, January 12, 2013 with an additional 48 hours held in abeyance. See Ex. B.

86.     On January 4, 2013 Crawford Mechem, M.D. reviewed and reported various records in the possession of the City of Philadelphia and the healthcare providers for Joanne and

19

Xavier Rodriguez.  Dr. Mechem concluded: "by failing to follow fire department policies, the Pennsylvania Department of Health EMS Protocols, and the National Standard Curriculum you delayed giving this patient potentially life-saving treatment.  Therefore I am suspending your medical command for a period of 48 hours.  This is to be served concurrently with the 48-hour suspension imposed on your by the fire commissioner, which will begin at 800 hours, January 7, 2013 and end at 2000 hours, January 12, 2013.  Future such violations of fire department policies and procedures of Pennsylvania EMS Protocols will result in additional action against your medical command status, potentially to include withdrawal of your medical command."

See Ex. C.

87.     The pattern of conduct described throughout this Complaint is consistent with various other controversies and instances of neglect that have come to light in the local media, including:

- http://www.northeasttimes.com/2013/nov/20/searching-answers2/

- http://www.nbcphiladelphia.com/investigations/Philly-Medic-Shortage-Causes-Lapse-in-911-Response-195783801.html

88.     According to City of Philadelphia records and upon information and belief, on May 16, 2012 Medic Unit 22 was placed in service.

89.     On October 2, 2012 Defendant VCI Emergency Vehicle Specialists picked up Medic Unit 22 and took it to their facility for inspection.

90.     On October 2, 2012 the manufacturer was contacted to report the problem with the malfunctioning door locks.

91.     On or about October 5, 2012 fleet maintenance devised a plan to check all medic units for similar door lock problems.

92.     On October 10, 2012 Joseph Gissinger, assistant fleet manager, reported that 2 of the 75 medic units were found to have similar door lock defects like the defects in Medic Unit 22.  These findings prompted the fleet manager to arrange a meeting with the apparatus vendor, vehicle manufacturer and lock manufacturer.

93.     On November 11, 2012 Philadelphia Fire Department conducted a meeting along with fleet maintenance Defendant VCI, Defendant Horton Emergency Vehicles and Defendant TriMark to discuss the findings of the inspections and the area of the part failure with the locks of Medic Unit 22, 23 and 36.

94.     The lock manufacturer, Defendant TriMark, reviewed plan to review the findings and provide feedback as to a solution within one to two weeks.

95.     According to City of Philadelphia records, and upon information and belief, after substantial investigation which included an inspection and/or testing of Medic Unit 22, including the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, Defendant TriMark concluded that the door access/lock system was defective.

96.     According to City of Philadelphia records, and upon information and belief, after substantial investigation which included an inspection and/or testing of Medic Unit 22, including the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, Defendant TriMark authored the following letter on April 15, 2013:

> Dear Joe Gissinger,
>
> On October 11th, 2012 TriMark Corporation inspected the City of Philadephia's ambulance unit number 22 after a reported rear door hardware system failure. After detailed review, TriMark has determined the power lock actuator failed in the "door lock" portion of the system.

21

After analysis of the entry door hardware system it was determined to invert motion of the "door lock" portion of the system to improve lock feature performance. The field retrofit kit design prevents the "door lock" failure mode.

The following "door lock" portion of the system changes were made:

- Added "door lock" module plate with bell crank feature.
- Placement of power lock actuator.
- Power lock actuator rod connected directly to outside paddle handle lock cam.

TriMark Corporation has proudly been a supplier partner to Horton Ambulance over the last 20 plus years. We are committed to exceeding our customer's quality expectations. Please contact us with any questions.

See Ex. D (TriMark Correspondence).

97. As a direct and proximate result of the conduct described herein, Joanne Rodriguez passed away.

98. As a direct and proximate result of the conduct described herein, Xavier Rodriguez suffered profound and permanent neurological and physical injuries.

99. At all relevant times, Joanne Rodriguez and/or Xavier Rodriguez were in the care, custody and/or control of all Defendants, all of whom had a duty to safeguard his well-being and to protect him.

100. At all times relevant hereto, all Defendants were acting under color of state law and with deliberate and/or reckless indifference to the reasonably foreseeable and/or known substantial risk of attack and/or serious injury to Joanne Rodriguez and/or Xavier Rodriguez.

101. The deliberately indifferent, conscience shocking, intentional, reckless, careless, negligent, willful, and outrageous conduct of Defendants City of Philadelphia, Philadelphia Fire Department Emergency Medical Services, Lisa McCall, and/or April Smallwood, acting under color of state law, included, inter alia, the following:

22

a.   Failing to recognize the rights, safety and health of Joanne Rodriguez and her infant, Xavier Rodriguez;

b.   Failing to exercise the standard of skill and care commonly exercised by healthcare providers in like cases;

c.   Failing to properly identify and/or treat the conditions of Joanne Rodriguez and her infant, Xavier Rodriguez;

d.   Failing to use and consult competent and experienced physicians and healthcare providers in examining, treating and providing medical care to Joanne Rodriguez and her infant, Xavier Rodriguez;

e.   Failing to coordinate care with other providers or physicians;

f.   Performing inadequate, incomplete, and unreasonable investigation into and assessment of Joanne Rodriguez's complaints;

g.   Failing to timely bring any equipment or an oxygen bag inside the residence during the first entry into the residence;

h.   Failing to timely provide for Joanne Rodriguez's and/or Xavier Rodriguez's basic needs, including oxygenation equipment and/or treatment;

i.   Failing to provide for Joanne Rodriguez's and/or Xavier Rodriguez's basic medical needs;

j.   Failing to provide immediate, necessary and appropriate medical treatment;

k.   Failing to deliver oxygen to Joanne Rodriguez and/or Xavier Rodriguez;

l.   Failing to perform proper and timely oxygen delivery to Joanne Rodriguez and/or Xavier Rodriguez;

m.   Failing to perform proper and timely risk stratification;

n.   Failing to properly and timely treat a patient who evidences hemodynamic compromise;

o.   Failing to prevent the progression of Joanne Rodriguez's progression from deep vein thrombosis to pulmonary embolism;

p.   Failing to properly and timely treat Joanne Rodriguez's deep vein thrombosis, pulmonary embolism, and/or thrombotic events;

q.   Failing to provide immediate therapeutic anticoagulation to Joanne Rodriguez;

23

r.   Failing to timely or properly provide thrombolytic therapy;

s.   Failing to treat Joanne Rodriguez with heparin or other anticoagulants;

t.   Failing to treat Joanne Rodriguez with unfractionated heparin (UFH), low–molecular weight heparin (LMWH), or fondaparinux (all grade 1A) in addition to an oral anticoagulant (warfarin);

u.   Failing to employ "clot busters" or other therapeutic agents to Joanne Rodriguez;

v.   Failing to timely and properly assess pulmonary embolism severity;

w.   Failing to prevent the cardiac arrest of Joanne Rodriguez;

x.   Failing to ensure that baby Xavier Rodriguez continued to receive oxygen during the treatment of Joanne Rodriguez;

y.   Harassing, threatening, physically abusing, hitting and/or assault;

z.   Failing to timely and properly transport Joanne Rodriguez and Xavier Rodriguez out of the ambulance and into the emergency room;

aa.  Failing to timely and properly open the ambulance doors;

bb.  Failing to timely and properly find alternative means of transporting Joanne Rodriguez out of the ambulance and into the emergency room;

cc.  Failing to timely and properly open the ambulance doors;

dd.  Conduct unbecoming a member of the Phila. Fire Dept;

ee.  Conduct indicating that Defendants had little or no regard for their responsibility as a member of the Phila. Fire Dept.;

ff.  Neglect of duty;

gg.  Failure to perform duties to the best of Defendants' ability;

hh.  Failure to uphold the Oath of Office of the Phila. Fire Dept.;

ii.  Failure to comply with any order, directive, regulation, etc., verbal or written, including EMS Procedure 13, PA Statewide ALS Protocols, Appendix E, Skills Manual, S.51, Oxygen Administration, S.52, Patient Assessment and S.60, Vital Signs, Assessment, EMS Procedure 21, PA Statewide BLS Protocols, #201, Initial Patient Contact, and/or #202, Oxygen administration;

24

jj.     Disobedience of orders, including EMS Procedure 13, PA Statewide ALS Protocols, Appendix E, Skills Manual, S.51, Oxygen Administration, S.52, Patient Assessment and S.60, Vital Signs, Assessment, EMS Procedure 21, PA Statewide BLS Protocols, #201, Initial Patient Contact, and/or #202, Oxygen administration;

kk.     Failure to retrieve the proper and/or required equipment from the medic unit to the residence, including oxygen administration equipment and a carrying device;

ll.     Failure to perform a thorough patient assessment;

mm.     Failure to perform appropriate treatment to the patient due to the failure to retrieve proper equipment;

nn.     Failure to perform a proper assessment and initiate treatment proper to moving a critically ill patient;

oo.     Failure to obtain vital signs on the patient in the residence;

pp.     Failure to bring any equipment upon the initial entry into the residence;

qq.     Failure to provide treatment consistent with EMS Procedure 13;

rr.     Failure to provide treatment consistent with Basic Life Support protocol #201 and #202;

ss.     Failure to provide oxygen to Joanne Rodriguez at the residence;

tt.     Failure to listen to Joanne Rodriguez's lungs at the residence;

uu.     Failing to develop policies regarding the assessment and treatment of pregnant patient complaints;

vv.     Failing to implement policies regarding the assessment and treatment of pregnant patient complaints;

ww.     Failing to enforce policies regarding the assessment and treatment of pregnant patient complaints;

xx.     Failing to develop policies regarding the assessment and treatment of patient complaints of difficulty breathing;

yy.     Failing to implement policies regarding the assessment and treatment of patient complaints of difficulty breathing;

zz.     Failing to enforce policies regarding the assessment and treatment of patient complaints of difficulty breathing;

aaa.   Failing to develop policies regarding the assessment and treatment of patient complaints of chest pain;

bbb.   Failing to implement policies regarding the assessment and treatment of patient complaints of chest pain;

ccc.   Failing to enforce policies regarding the assessment and treatment of patient complaints of chest pain;

ddd.   Failing to develop policies regarding oxygen administration to pregnant patients;

eee.   Failing to implement policies regarding oxygen administration to pregnant patients;

fff.   Failing to enforce policies regarding oxygen administration to pregnant patients;

ggg.   Failing to develop policies regarding the assessment and treatment of patients with history of asthma, deep vein thrombosis, and/or pulmonary embolism;

hhh.   Failing to implement policies regarding the assessment and treatment of patients with history of asthma, deep vein thrombosis, and/or pulmonary embolism;

iii.   Failing to enforce policies regarding the assessment and treatment of patients with history of asthma, deep vein thrombosis, and/or pulmonary embolism;

jjj.   Failing to develop policies regarding the transfer and use of medical equipment from the ambulance to the area where the patient is located;

kkk.   Failing to implement policies regarding the transfer and use of medical equipment from the ambulance to the area where the patient is located;

lll.   Failing to enforce policies regarding the transfer and use of medical equipment from the ambulance to the area where the patient is located;

mmm.   Failing to develop policies regarding the assessment of patients prior to moving the patient to an ambulance;

nnn.   Failing to implement policies regarding the assessment of patients prior to moving the patient to an ambulance;

ooo.   Failing to enforce policies regarding the assessment of patients prior to moving the patient to an ambulance;

26

ppp.   Failing to develop policies regarding the inspection and verification of emergency transport vehicles as safe and fully operational, including door lock mechanisms, prior to use in emergency medical services;

qqq.   Failing to implement policies regarding the inspection and verification of emergency transport vehicles as safe and fully operational, including door lock mechanisms, prior to use in emergency medical services;

rrr.   Failing to enforce policies regarding the inspection and verification of emergency transport vehicles as safe and fully operational, including door lock mechanisms, prior to use in emergency medical services;

sss.   Developing unreasonable and inadequate policies regarding the assessment and treatment of pregnant patient complaints;

ttt.   Implementing unreasonable and inadequate policies regarding the assessment and treatment of pregnant patient complaints;

uuu.   Enforcing unreasonable and inadequate policies regarding the assessment and treatment of pregnant patient complaints;

vvv.   Developing unreasonable and inadequate policies regarding the assessment and treatment of patient complaints of difficulty breathing;

www.   Implementing unreasonable and inadequate policies regarding the assessment and treatment of patient complaints of difficulty breathing;

xxx.   Enforcing unreasonable and inadequate policies regarding the assessment and treatment of patient complaints of difficulty breathing;

yyy.   Developing unreasonable and inadequate regarding the assessment and treatment of patient complaints of chest pain;

zzz.   Implementing unreasonable and inadequate policies regarding the assessment and treatment of patient complaints of chest pain;

aaaa.   Enforcing unreasonable and inadequate policies regarding the assessment and treatment of patient complaints of chest pain;

bbbb.   Developing unreasonable and inadequate policies regarding oxygen administration to pregnant patients;

cccc.   Implementing unreasonable and inadequate policies regarding oxygen administration to pregnant patients;

dddd.   Enforcing unreasonable and inadequate policies regarding oxygen administration to pregnant patients;

eeee.   Developing unreasonable and inadequate policies regarding the assessment and treatment of patients with history of asthma, deep vein thrombosis, and/or pulmonary embolism;

ffff.   Implementing unreasonable and inadequate policies regarding the assessment and treatment of patients with history of asthma, deep vein thrombosis, and/or pulmonary embolism;

gggg.   Enforcing unreasonable and inadequate policies regarding the assessment and treatment of patients with history of asthma, deep vein thrombosis, and/or pulmonary embolism;

hhhh.   Developing unreasonable and inadequate policies regarding the transfer and use of medical equipment from the ambulance to the area where the patient is located;

iiii.   Implementing unreasonable and inadequate policies regarding the transfer and use of medical equipment from the ambulance to the area where the patient is located;

jjjj.   Enforcing unreasonable and inadequate policies regarding the transfer and use of medical equipment from the ambulance to the area where the patient is located;

kkkk.   Developing unreasonable and inadequate regarding the assessment of patients prior to moving the patient to an ambulance;

llll.   Implementing unreasonable and inadequate policies regarding the assessment of patients prior to moving the patient to an ambulance;

mmmm.       Enforcing unreasonable and inadequate policies regarding the assessment of patients prior to moving the patient to an ambulance;

nnnn.   Developing unreasonable and inadequate regarding the inspection and verification of emergency transport vehicles as safe and fully operational, including door lock mechanisms, prior to use in emergency medical services;

oooo.   Implementing unreasonable and inadequate policies regarding the inspection and verification of emergency transport vehicles as safe and fully operational, including door lock mechanisms, prior to use in emergency medical services;

pppp.   Enforcing unreasonable and inadequate policies regarding the inspection and verification of emergency transport vehicles as safe and fully operational, including door lock mechanisms, prior to use in emergency medical services;

qqqq. Improperly training emergency medical technicians, including April Smallwood and Lisa McCall, regarding proper and timely treatment of patients, including patients with a history that includes pregnancy, asthma, deep vein thrombosis, pulmonary embolism, falls, chest pain, and/or difficulty breathing;

rrrr. Failure to train emergency medical technicians, including April Smallwood and Lisa McCall, regarding proper and timely treatment of patients, including patients with a history that includes pregnancy, asthma, deep vein thrombosis, pulmonary embolism, falls, chest pain, and/or difficulty breathing;

ssss. Having, developing, and/or implementing a policy which condones, permits, encourages, and/or fails to prevent the conduct described herein;

tttt. Depriving Joanne Rodriguez and her infant, Xavier Rodriguez, of necessary and adequate medical treatment;

uuuu. Deliberately, intentionally, and knowingly depriving and disregarding the serious medical needs of Joanne Rodriguez and her infant, Xavier Rodriguez;

vvvv. Committing medical malpractice;

wwww.   Increasing the risk of harm to Joanne Rodriguez and her infant, Xavier Rodriguez by failing to render prompt, appropriate, and necessary medical treatment;

xxxx. Violating the laws, statutes, ordinances, policies, procedures, and/or health standards applicable in the Commonwealth of Pennsylvania; and,

yyyy. Engaging in deliberately indifferent and conscience shocking conduct, including, but not limited to, the conduct set forth in the preceding subparagraphs.

102. At all times relevant hereto, Defendants were aware of and recklessly and deliberately indifferent to the need for additional and/or different training, testing, rules, regulations, policies, procedures, guidelines, directives, investigation and/or discipline relating to: emergency medical services, emergency medical transport, the treatment of pregnant women, the administration of oxygen to patients, anticoagulation and thrombotic therapeutics, the need to properly inspect, maintain, service, and repair emergency transport vehicles and ambulances, and

maintained a custom, policy and/or practice of failing to discipline and/or encouraging the aforesaid unnecessary, negligent, irresponsible, reckless behavior described in detail herein.

103.   The hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, installed or otherwise used in Medic Unit 22 were in a defective condition.

104.   The hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, installed or otherwise used in Medic Unit 22 should have allowed for quick and safe ingress, egress, and transport in and out of the medic unit so that patients, like Joanne and Xavier Rodriguez, could timely receive emergency care.

105.   As a result of the defective condition of the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, installed or otherwise used in Medic Unit 22, Defendants, nearby healthcare providers, police officers, and other individuals were unable to open the ambulance doors for a period of several minutes, during which Joanne Rodriguez and Xavier Rodriguez were denied necessary and emergency medical care, as described throughout this complaint, which caused the death of Joanne Rodriguez.

106.   As a result of the defective condition of the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, installed or otherwise used in Medic Unit 22, Defendants, nearby healthcare providers, police officers, and other individuals were unable to open the ambulance doors for a period of several minutes, during which Joanne Rodriguez and

Xavier Rodriguez were denied necessary and emergency medical care, as described throughout this complaint, which caused the severe and permanent injuries to Xavier Rodriguez.

107.    As a result of the negligent, reckless, intentional, outrageous, and wrongful conduct of the Defendants as set forth above and herein, Joanne Rodriguez suffered severe injuries and damages set forth above, including, but not limited to the following:

a.    Progression of deep vein thrombosis;

b.    Progression of pulmonary embolism;

c.    Progression of cardiac arrest;

d.    Deprivation of oxygen;

e.    Past pain and suffering;

f.    Future pain and suffering;

g.    Past mental anguish;

h.    Past medical expenses;

i.    Future mental anguish;

j.    Future medical expenses;

k.    Past and future loss of earnings capacity and other economic losses

l.    Past and future loss of life's pleasures;

m.    Humiliation and embarrassment;

n.    Disfigurement;

o.    Incidental and other expenses;

p.    Past custodial and nursing expenses;

q.    Future custodial and nursing expenses;

r.    Death; and

   s.  Such other ills and injuries which will be set forth and more fully described as this lawsuit continues.

108. As a result of the negligent, reckless, intentional, outrageous, and wrongful conduct of the Defendants as set forth above and herein, Xavier Rodriguez suffered severe injuries and damages set forth above, including, but not limited to the following:

   a.  Temporary and permanent traumatic brain injuries;

   b.  Temporary and permanent neurological injuries;

   c.  Temporary and permanent physical disabilities;

   d.  Deprivation of oxygen;

   e.  Past pain and suffering;

   f.  Future pain and suffering;

   g.  Past mental anguish;

   h.  Past medical expenses;

   i.  Future mental anguish;

   j.  Future medical expenses;

   k.  Past and future loss of earnings capacity and other economic losses

   l.  Past and future loss of life's pleasures;

   m.  Humiliation and embarrassment;

   n.  Disfigurement;

   o.  Incidental and other expenses;

   p.  Past custodial and nursing expenses;

   q.  Future custodial and nursing expenses; and

r.   Such other ills and injuries which will be set forth and more fully described as this lawsuit continues.

## COUNT I – NEGLIGENT, RECKLESS, INTENTIONAL, OUTRAGEOUS CONDUCT
**Plaintiffs, Eriberto Rodriguez, as Administrator of the Estate of Joanne Rodriguez, Deceased**
**v.**
**Defendant City of Philadelphia, Defendant Philadelphia Fire Department Emergency Medical Services, Lisa McCall, and April Smallwood**

109.   The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

110.   The aforementioned conduct of Defendants, both vicariously and in their own right, constitutes negligent, reckless, intentional and outrageous conduct.

111.   As a direct and proximate result of Defendants' conduct, Plaintiff's decedent, Joanne Rodriguez, was caused to suffer grievous physical and emotional injuries and losses as set forth above and herein.

**WHEREFORE,** Plaintiff demands judgment against Defendants individually, jointly, and severally, for punitive damages, compensatory damages. attorneys' fees, costs of suit, and such other relief as the Court may deem just and proper.

## COUNT II – NEGLIGENT, RECKLESS, INTENTIONAL, OUTRAGEOUS CONDUCT
**Xavier Rodriguez, a Minor, by Eriberto Rodriguez, the Natural Parent and Guardian of Xavier Rodriguez, and Daisy Morales, Co-Legal Guardian of Xavier Rodriguez**
**v.**
**Defendant City of Philadelphia, Defendant Philadelphia Fire Department Emergency Medical Services, Lisa McCall, and April Smallwood**

112.   The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

113.   The aforementioned conduct of Defendants, both vicariously and in their own right, constitutes negligent, reckless, intentional and outrageous conduct.

114.   As a direct and proximate result of Defendants' conduct, Xavier Rodriguez, was caused to suffer grievous physical and emotional injuries and losses as set forth above and herein.

**WHEREFORE,** Plaintiff demands judgment against Defendants individually, jointly, and severally, for punitive damages, compensatory damages, attorneys' fees, costs of suit, and such other relief as the Court may deem just and proper.

## COUNT III – MEDICAL MALPRACTICE
**Plaintiffs, Eriberto Rodriguez, as Administrator of the Estate of Joanne Rodriguez, Deceased**
**v.**
**Defendant City of Philadelphia, Defendant Philadelphia Fire Department Emergency Medical Services, Lisa McCall, and April Smallwood**

115.   The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

116.   The aforementioned conduct of Defendants, both vicariously and in their own right, constitutes negligent, reckless, intentional, outrageous conduct that constitutes medical malpractice.

117.   As a direct and proximate result of Defendants' conduct, Joanne Rodriguez, was caused to suffer grievous physical and emotional injuries and losses as set forth above and herein.

**WHEREFORE,** Plaintiff demands judgment against Defendants individually, jointly, nd severally, for punitive damages, compensatory damages, attorneys' fees, costs of suit, and such other relief as the Court may deem just and proper.

34

## COUNT IV – MEDICAL MALPRACTICE
**Xavier Rodriguez, a Minor, by Eriberto Rodriguez, the Natural Parent and Guardian of Xavier Rodriguez, and Daisy Morales, Co-Legal Guardian of Xavier Rodriguez**
v.
**Defendant City of Philadelphia, Defendant Philadelphia Fire Department Emergency Medical Services, Lisa McCall, and April Smallwood**

118.   The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

119.   The aforementioned conduct of Defendants, both vicariously and in their own right, constitutes negligent, reckless, intentional, outrageous conduct that constitutes medical malpractice.

120.   As a direct and proximate result of Defendants' conduct, Xavier Rodriguez, was caused to suffer grievous physical and emotional injuries and losses as set forth above and herein.

**WHEREFORE,** Plaintiff demands judgment against Defendants individually, jointly, and severally, for punitive damages, compensatory damages, attorneys' fees, costs of suit, and such other relief as the Court may deem just and proper.

## COUNT V – MOTOR VEHICLE NEGLIGENCE
**Plaintiffs, Eriberto Rodriguez, as Administrator of the Estate of Joanne Rodriguez, Deceased**
v.
**Defendant City of Philadelphia, Defendant Philadelphia Fire Department Emergency Medical Services, Lisa McCall, and April Smallwood**

121.   The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

122.   The aforementioned conduct of Defendants, both vicariously and in their own right, constitutes negligent, reckless, intentional, outrageous conduct that constitutes wrongful

maintenance and repair of Defendants' Medic Unit 22, including the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms.

123.   Plaintiff's injuries, described herein, occurred while Defendants' Medic Unit 22 was being operated.

124.   Plaintiff's injuries, described herein, were the direct and proximate result of Defendants' decision to drive Medic Unit 22, as opposed to an ambulance that had fully functioning door hardware systems and power lock actuators.

125.   The aforementioned conduct of Defendants, both vicariously and in their own right, constitutes negligent, reckless, intentional, outrageous conduct that constitutes motor vehicle negligence under the "motor vehicle exception" to municipal immunity laws in the Commonwealth of Pennsylvania. See 42 Pa.C.S.A. § 8542.

**WHEREFORE,** Plaintiff demands judgment against Defendants individually, jointly, and severally, for punitive damages, compensatory damages, attorneys' fees, costs of suit, and such other relief as the Court may deem just and proper.

### COUNT VI – MOTOR VEHICLE NEGLIGENCE
**Xavier Rodriguez, a Minor, by Eriberto Rodriguez, the Natural Parent and Guardian of Xavier Rodriguez, and Daisy Morales, Co-Legal Guardian of Xavier Rodriguez**
**v.**
**Defendant City of Philadelphia, Defendant Philadelphia Fire Department Emergency Medical Services, Lisa McCall, and April Smallwood**

126.   The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

127.   The aforementioned conduct of Defendants, both vicariously and in their own right, constitutes negligent, reckless, intentional, outrageous conduct that constitutes wrongful

maintenance and repair of Defendants' Medic Unit 22, including the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms.

128.   Plaintiff's injuries, described herein, occurred while Defendants' Medic Unit 22 was being operated.

129.   Plaintiff's injuries, described herein, were the direct and proximate result of Defendants' decision to drive Medic Unit 22, as opposed to an ambulance that had fully functioning door hardware systems and power lock actuators.

130.   The aforementioned conduct of Defendants, both vicariously and in their own right, constitutes negligent, reckless, intentional, outrageous conduct that constitutes motor vehicle negligence under the "motor vehicle exception" to municipal immunity laws in the Commonwealth of Pennsylvania. See 42 Pa.C.S.A. § 8542.

131.   As a direct and proximate result of Defendants' conduct, Xavier Rodriguez, was caused to suffer grievous physical and emotional injuries and losses as set forth above and herein.

WHEREFORE, Plaintiff demands judgment against Defendants individually, jointly, and severally, for punitive damages, compensatory damages, attorneys' fees, costs of suit, and such other relief as the Court may deem just and proper.

## COUNT VII – CIVIL RIGHTS
**Plaintiffs, Eriberto Rodriguez, as Administrator of the Estate of Joanne Rodriguez, Deceased**
**v.**
**Defendant City of Philadelphia, Defendant Philadelphia Fire Department Emergency Medical Services, Lisa McCall, and April Smallwood**

132.   The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

133.   At all relevant times, Defendants had a duty to take reasonable measures to guarantee the safety, and welfare of Joanne Rodriguez.

134.   At all relevant times, Defendants were aware, or should have been aware, that a substantial risk of serious harm to Joanne Rodriguez existed.

135.   The aforementioned conduct of Defendants, acting under color of state law, was reckless and deliberately indifferent to the safety, well-being, health, bodily integrity, privacy and liberty of Joanne Rodriguez, and was committed in conscious and willful disregard of the substantial and/or unjustifiable risk of causing harm to members of the public and to Joanne Rodriguez, and was so egregious as to shock the conscience.

136.   The aforementioned conduct of Defendants, acting under color of state law, created a danger which resulted in the aforementioned severe physical and emotional harm.

137.   At all relevant times, Defendants had a policy or practice which created an unreasonable risk of harm and/or injury, and were aware that said unreasonable risk was created.

138.   The severe physical and emotional harm caused to Joanne Rodriguez was foreseeable and fairly direct to Defendants, as well as the result of Defendants' aforesaid policy or practice.

139.   The aforementioned conduct of Defendants, acting under color of state law, created an opportunity for danger which otherwise would not have existed.

140.   The aforementioned conduct of Defendants, acting under color of state law, constituted an affirmative act to provide her medical care and in so doing restrain Joanne

Rodriguez's freedom, and thus triggered a special relationship with Joanne Rodriguez under which Defendants assumed a duty to ensure his safety and well-being.

141.  The aforementioned conduct of Defendants, acting under color of state law, constitutes a breach of Defendants' duty and was in deliberate indifference to the danger and/or substantial risk of harm facing Joanne Rodriguez so as to shock the conscience.

142.  At all times relevant hereto, Defendants were aware of and recklessly and deliberately indifferent to the need for additional and/or different training, testing, rules, regulations, policies, procedures, guidelines, directives, investigation and/or discipline relating to the conduct described throughout this Complaint, including Paragraph 101 and its subparagraphs.

143.  Defendants failure to properly train their employees, agents, representatives, and/or brokers, including but not limited to Lisa McCall and April Smallwood, amounted to a deliberate indifference of the rights of Joanne Rodriguez.

144.  The aforementioned conduct of all Defendants, acting under color of state law, violated Joanne Rodriguez 's constitutional rights to be free from unreasonable searches and seizures, rights to medical care in custody, rights to be free from cruel and unusual punishment, rights to privacy, right to bodily integrity, right to safety, and to substantive and procedural due process, as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and as remediable pursuant to 42 U.S.C. §1983.

145.  The conduct of all Defendants as set forth above was the moving force behind the violation of and/or caused the violation of Joanne Rodriguez's civil rights as set forth above.

146.   As a direct and proximate result of the violations of Joanne Rodriguez's civil rights, she was caused to suffer grievous physical and emotional injuries and losses as set forth above and herein.

**WHEREFORE,** Plaintiff demands judgment against Defendants individually, jointly, and severally, for punitive damages, compensatory damages, attorneys' fees, costs of suit, and such other relief as the Court may deem just and proper.

## COUNT VIII – CIVIL RIGHTS
**Xavier Rodriguez, a Minor, by Eriberto Rodriguez, the Natural Parent and Guardian of Xavier Rodriguez, and Daisy Morales, Co-Legal Guardian of Xavier Rodriguez**
**v.**
**Defendant City of Philadelphia, Defendant Philadelphia Fire Department Emergency Medical Services, Lisa McCall, and April Smallwood**

147.   The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

148.   At all relevant times, Defendants had a duty to take reasonable measures to guarantee the safety, and welfare of Xavier Rodriguez.

149.   At all relevant times, Defendants were aware, or should have been aware, that a substantial risk of serious harm to Xavier Rodriguez existed.

150.   The aforementioned conduct of Defendants, acting under color of state law, was reckless and deliberately indifferent to the safety, well-being, health, bodily integrity, privacy and liberty of Xavier Rodriguez, and was committed in conscious and willful disregard of the substantial and/or unjustifiable risk of causing harm to members of the public and to Joanne Rodriguez, and was so egregious as to shock the conscience.

151.   The aforementioned conduct of Defendants, acting under color of state law, created a danger which resulted in the aforementioned severe physical and emotional harm.

152.   At all relevant times, Defendants had a policy or practice which created an unreasonable risk of harm and/or injury, and were aware that said unreasonable risk was created.

153.   The severe physical and emotional harm caused to Xavier Rodriguez was foreseeable and fairly direct to Defendants, as well as the result of Defendants' aforesaid policy or practice.

154.   The aforementioned conduct of Defendants, acting under color of state law, created an opportunity for danger which otherwise would not have existed.

155.   The aforementioned conduct of Defendants, acting under color of state law, constituted an affirmative act to provide her medical care and in so doing restrain Xavier Rodriguez's freedom, and thus triggered a special relationship with Xavier Rodriguez under which Defendants assumed a duty to ensure his safety and well-being.

156.   The aforementioned conduct of Defendants, acting under color of state law, constitutes a breach of Defendants' duty and was in deliberate indifference to the danger and/or substantial risk of harm facing Xavier Rodriguez so as to shock the conscience.

157.   At all times relevant hereto, Defendants were aware of and recklessly and deliberately indifferent to the need for additional and/or different training, testing, rules, regulations, policies, procedures, guidelines, directives, investigation and/or discipline relating to the conduct described throughout this Complaint, including Paragraph 101 and its subparagraphs.

158.   Defendants failure to properly train their employees, agents, representatives, and/or brokers, including but not limited to Lisa McCall and April Smallwood, amounted to a deliberate indifference of the rights of Xavier Rodriguez.

41

159.   The aforementioned conduct of all Defendants, acting under color of state law, violated Xavier Rodriguez 's constitutional rights to be free from unreasonable searches and seizures, rights to medical care in custody, rights to be free from cruel and unusual punishment, rights to privacy, right to bodily integrity, right to safety, and to substantive and procedural due process, as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and as remediable pursuant to 42 U.S.C. §1983.

160.   The conduct of all Defendants as set forth above was the moving force behind the violation of and/or caused the violation of Joanne Rodriguez's civil rights as set forth above.

161.   As a direct and proximate result of the violations of Xavier Rodriguez's civil rights, he was caused to suffer grievous physical and emotional injuries and losses as set forth above and herein.

**WHEREFORE,** Plaintiff demands judgment against Defendants individually, jointly, and severally, for punitive damages, compensatory damages, attorneys' fees, costs of suit, and such other relief as the Court may deem just and proper.

## COUNT IX – 402A STRICT PRODUCT LIABILITY
**Plaintiffs, Eriberto Rodriguez, as Administrator of the Estate of Joanne Rodriguez, Deceased**
**v.**
**All Defendants**

162.   The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

163.   As a direct and proximate result of the events described in, Defendants McCall and Smallwood, police officers, and various healthcare providers and unidentified individuals at or near the Temple Hospital Emergency Room were unable to open the doors to the Medic Unit 22 in a timely fashion.

164.    The hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, installed or otherwise used in Medic Unit 22 were in a defective condition at the time they left the possession and control of Defendants and were not substantially changed prior to the time of the events and injuries described herein.

165.    The defective condition of the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, installed or otherwise used in Medic Unit 22 were the cause and/or a substantial factor in causing the events and injuries described in, including Joanne Rodriguez's death.

166.    Defendants, by their agents, servants, workmen and/or employees are strictly liable under 402A, Restatement of Torts (Second) by:

a.    Designing, assembling, manufacturing, selling, supplying, and distributing hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, in a defective condition;

b.    Designing, assembling, manufacturing, selling, supplying and distributing hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, that were unreasonably dangerous to the users;

c.    Designing, assembling, manufacturing, selling, supplying and distributing hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, that were not safe for their intended uses and purposes;

d.    Designing, assembling, manufacturing, selling and supplying and distributing the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, which lacked

43

the necessary features to make it safe for their intended use and purpose so that they would provide adequate crash protection;

e.  Knowing of prior accidents and lawsuits which alleged hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, failure and failing to prevent future injuries from occurring in an attempt to reduce designing/production costs and increase Defendants' profits;

f.  Designing, assembling, manufacturing and selling and supplying hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, which could have been designed more safely;

g.  Designing, assembling, manufacturing and selling and distributing an hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, that lacked adequate warnings;

h.  Violating applicable State, Local and industry standards;

i.  Failing to adequately and properly test said ambulance/Medic Unit 22 and/or hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, after its design and/or assembly;

j.  Failing to ensure that ultimate end users of the ambulance/Medic Unit 22 and/or hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, were adequately protected in the event of the need to emergently remove a patient from the ambulance/Medic Unit;

k.  Failing to investigate, retain, and analyze prior accident information in order to warn and/or notify ultimate users of the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, design defects and dangers and avoid subsequent situations;

l.  Willfully and wantonly failing to take steps to make the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, safe for their intended use and purpose in an attempt to reduce production costs and increase Defendant's profits;

44

m.   Acting in disregard of a foreseeable and foreseen risk that users would be injured by the failure of the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, and failure to design the ambulance/Medic Unit 22, hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, in a way to minimize or eliminate the risk of injury caused by the delays in the emergency removal of a patient from the ambulance/Medic Unit;

n.   By reason of the breach of the Defendant's duties under 402A Restatement of Torts (Second) has forced Plaintiff to suffer serious and permanent injuries as more fully set forth above.

**WHEREFORE,** Plaintiff demands judgment against Defendants individually, jointly, and severally, for punitive damages, compensatory damages, attorneys' fees, costs of suit, and such other relief as the Court may deem just and proper.

## COUNT X – 402A STRICT PRODUCT LIABILITY
**Xavier Rodriguez, a Minor, by Eriberto Rodriguez, the Natural Parent and Guardian of Xavier Rodriguez, and Daisy Morales, Co-Legal Guardian of Xavier Rodriguez**
**v.**
**All Defendants**

167.   The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

168.   As a direct and proximate result of the events described in, Defendants McCall and Smallwood, police officers, and various healthcare providers and unidentified individuals at or near the Temple Hospital Emergency Room were unable to open the doors to the Medic Unit 22 in a timely fashion.

169.   The hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock

mechanisms, installed or otherwise used in Medic Unit 22 were in a defective condition at the time they left the possession and control of Defendants and were not substantially changed prior to the time of the events and injuries described herein.

170.  The defective condition of the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, installed or otherwise used in Medic Unit 22 were the cause and/or a substantial factor in causing the events and injuries described in, including Joanne Rodriguez's death.

171.  Defendants, by their agents, servants, workmen and/or employees are strictly liable under 402A, Restatement of Torts (Second) by:

a.   Designing, assembling, manufacturing, selling, supplying, and distributing hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, in a defective condition;

b.   Designing, assembling, manufacturing, selling, supplying and distributing hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, that were unreasonably dangerous to the users;

c.   Designing, assembling, manufacturing, selling, supplying and distributing hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, that were not safe for their intended uses and purposes;

d.   Designing, assembling, manufacturing, selling and supplying and distributing the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, which lacked the necessary features to make it safe for their intended use and purpose so that they would provide adequate crash protection;

e.   Knowing of prior accidents and lawsuits which alleged hardware products, including power lock actuators, door hardware systems, handles, latches,

46

striker bolts, linkages, and/or complete door access systems and door lock mechanisms, failure and failing to prevent future injuries from occurring in an attempt to reduce designing/production costs and increase Defendants' profits;

f.  Designing, assembling, manufacturing and selling and supplying hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, which could have been designed more safely;

g.  Designing, assembling, manufacturing and selling and distributing an hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, that lacked adequate warnings;

h.  Violating applicable State, Local and industry standards;

i.  Failing to adequately and properly test said ambulance/Medic Unit 22 and/or hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, after its design and/or assembly;

j.  Failing to ensure that ultimate end users of the ambulance/Medic Unit 22 and/or hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, were adequately protected in the event of the need to emergently remove a patient from the ambulance/Medic Unit;

k.  Failing to investigate, retain, and analyze prior accident information in order to warn and/or notify ultimate users of the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, design defects and dangers and avoid subsequent situations;

l.  Willfully and wantonly failing to take steps to make the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, safe for their intended use and purpose in an attempt to reduce production costs and increase Defendant's profits;

m.  Acting in disregard of a foreseeable and foreseen risk that users would be injured by the failure of the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, and

47

failure to design the ambulance/Medic Unit 22, hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms, in a way to minimize or eliminate the risk of injury caused by the delays in the emergency removal of a patient from the ambulance/Medic Unit;

n.     By reason of the breach of the Defendant's duties under 402A Restatement of Torts (Second) has forced Plaintiff to suffer serious and permanent injuries as more fully set forth above.

**WHEREFORE,** Plaintiff demands judgment against Defendants individually, jointly, and severally, for punitive damages, compensatory damages, attorneys' fees, costs of suit, and such other relief as the Court may deem just and proper.

## COUNT XI – BREACH OF WARRANTY
**Plaintiffs, Eriberto Rodriguez, as Administrator of the Estate of Joanne Rodriguez, Deceased**
**v.**
**All Defendants**

172.     The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

173.     At all times pertinent hereto, Defendants warranted, both expressly and impliedly, that the ambulance/Medic Unit 22 was free from defects, was of mechantable quality, and was safe and suitable for the uses for which it was intended.

174.     At all times pertinent hereto, Defendants warranted, both expressly and impliedly, that the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms were free from defects, was of mechantable quality, and was safe and suitable for the uses for which it was intended.

175.    As a direct result of Defendants' breach of their contracts and their breach of their express and implied warranties, the risk of harm to Joanne Rodriguez was caused to increase, and Joanne Rodriguez died.

**WHEREFORE,** Plaintiff demands judgment against Defendants individually, jointly, and severally, for punitive damages, compensatory damages, attorneys' fees, costs of suit, and such other relief as the Court may deem just and proper.

### COUNT XII – BREACH OF WARRANTY
**Xavier Rodriguez, a Minor, by Eriberto Rodriguez, the Natural Parent and Guardian of Xavier Rodriguez, and Daisy Morales, Co-Legal Guardian of Xavier Rodriguez**
**v.**
**All Defendants**

176.    The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

177.    At all times pertinent hereto, Defendants warranted, both expressly and impliedly, that the ambulance/Medic Unit 22 was free from defects, was of mechantable quality, and was safe and suitable for the uses for which it was intended.

178.    At all times pertinent hereto, Defendants warranted, both expressly and impliedly, that the hardware products, including power lock actuators, door hardware systems, handles, latches, striker bolts, linkages, and/or complete door access systems and door lock mechanisms were free from defects, was of mechantable quality, and was safe and suitable for the uses for which it was intended.

179.    As a direct and proximate result of Defendants' conduct, Xavier Rodriguez, was caused to suffer grievous physical and emotional injuries and losses as set forth above and herein.

**WHEREFORE,** Plaintiff demands judgment against Defendants individually, jointly, and severally, for punitive damages, compensatory damages, attorneys' fees, costs of suit, and such other relief as the Court may deem just and proper.

## COUNT XIII – NEGLIGENCE
**Plaintiffs, Eriberto Rodriguez, as Administrator of the Estate of Joanne Rodriguez, Deceased**
**v.**
**All Defendants**

180.   The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

181.   The aforementioned conduct of Defendants, both vicariously and in their own right, constitutes negligence.

182.   As a direct and proximate result of Defendants' conduct, the risk of harm was increased to Joanne Rodriguez, she was caused to suffer grievous physical and emotional injuries and losses as set forth above and herein, including death.

**WHEREFORE,** Plaintiff demands judgment against Defendants individually, jointly, and severally, for punitive damages, compensatory damages, attorneys' fees, costs of suit, and such other relief as the Court may deem just and proper.

## COUNT XIV – NEGLIGENCE
**Xavier Rodriguez, a Minor, by Eriberto Rodriguez, the Natural Parent and Guardian of Xavier Rodriguez, and Daisy Morales, Co-Legal Guardian of Xavier Rodriguez**
**v.**
**All Defendants**

183.   The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

184.    The aforementioned conduct of Defendants, both vicariously and in their own right, constitutes negligence.

185.    As a direct and proximate result of Defendants' conduct, Xavier Rodriguez, was caused to suffer grievous physical and emotional injuries and losses as set forth above and herein.

**WHEREFORE,** Plaintiff demands judgment against Defendants individually, jointly, and severally, for punitive damages, compensatory damages, attorneys' fees, costs of suit, and such other relief as the Court may deem just and proper.

## COUNT XV – WRONGFUL DEATH
**Plaintiffs, Eriberto Rodriguez, as Administrator of the Estate of Joanne Rodriguez, Deceased**
**v.**
**All Defendants**

186.    The previous paragraphs are incorporated herein as if set forth in full.

187.    Plaintiff incorporates herein by reference the preceding paragraphs as if set forth in full.

188.    Plaintiff brings this action as the personal representatives of the decedent's Estate pursuant to 42 Pa. Cons. Stat. Ann. § 8301 (d).

189.    On October 1, 2012, Joanne Rodriguez died intestate. Her then husband, and now widower, and her son Xavier, and her parents are entitled to recover damages under the Wrongful Death Act and the Survival Act are as follows:

| | | |
|---|---|---|
| ERIBERTO RODRIGUEZ | 4079 Creston Street Philadelphia, PA 19135 | Widower |
| XAVIER RODRIGUEZ | 2833 N. 9th Street Philadelphia, PA 19133 | Son |

| | | |
|---|---|---|
| DAISY MORALES | 2833 N. 9th Street<br>Philadelphia, PA 19133 | Mother/Grandmother |
| JUAN CEBALLO | 2833 N. 9th Street<br>Philadelphia, PA 19133 | Mother/Grandmother |

190.   Plaintiff demands all lawful damages for all persons entitled to recover therefor, including medical expenses, funeral expenses, expenses of administration, the loss of expected pecuniary contributions and the loss of decedent's care, comfort, society, guidance and tutelage. Plaintiff claims all damages recoverable at law for the wrongful death of Joanne Rodriguez, including medical expenses, funeral expenses, and expenses of administration.

**WHEREFORE,** Plaintiffs demand judgment in his favor and against the Defendants, jointly and/or severally, for a sum in excess of the jurisdictional limits for arbitration, together with interest, costs and damages for pre-judgment delay.

## COUNT XVI – SURVIVAL ACTION
**Plaintiff, Eriberto Rodriguez, as Administrator of the Estate of Joanne Rodriguez, Deceased**
**v.**
**All Defendants**

191.   The previous paragraphs are incorporated herein as if set forth in full.

192.   Plaintiff incorporates herein by reference the preceding paragraphs as if set forth in full.

193.   Plaintiff brings this action as the personal representatives of the decedent's Estate pursuant to 42 PA. CONS. STAT. ANN. § 8302, and claims on behalf of the Estate all damages recoverable by law, including decedent's pain and suffering and loss of future earnings capacity.

WHEREFORE, Plaintiff demands judgment in his favor and against the Defendants, jointly and/or severally, for a sum in excess of the jurisdictional limits for arbitration, together with interest, costs and damages for pre-judgment delay.

## COUNT XVI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff Daisy Morales
v.
### All Defendants

194.   Plaintiff Daisy Morales incorporates herein by reference the preceding paragraphs as if set forth in full.

195.   The aforementioned conduct of Defendants, both vicariously and in their own right, constitutes negligent, reckless, intentional, and outrageous conduct, as described herein, including at Paragraphs 101 and 103-106.

196.   Daisy Morales is closely related to the victims in this case, as she is the mother of Joanne Rodriguez, and the maternal grandmother of Xavier Rodriguez

197.   Daisy Morales was at the residence at all pertinent times described herein, including during Defendants' response to the 911 call and the transport of Joanne Rodriguez from the residence to the ambulance.

198.   Daisy Morales was inside the ambulance/Medic Unit 22 at all pertinent times described herein, including the transport of Joanne Rodriguez from the residence to Temple Hospital, the events surrounding the door lock malfunction, and Joanne Rodriguez's code.

199.   Daisy Morales was near the scene of the conduct described herein, including but not limited to the Defendants' response to the 911 call, the Defendants' failure to timely and properly bring medical equipment into the residence, the derelict and verbally abusive conduct of Defendants that occurred within the residence, the untimely provision of necessary medical

treatment including oxygenation and anti-coagulation therapy, the defective condition of the doors and/or door locks, the code of Joanne Rodriguez, the cardiac arrest of Joanne Rodriguez, and the traumatic birth of Xavier Rodriguez.

200. As a direct and proximate result of Defendants' conduct, Daisy Morales suffered shock or distress resulting from a direct emotional impact caused by the sensory or contemporaneous observance of the negligent and reckless conduct described herein.

201. As a direct and proximate result of Defendants' conduct, Daisy Morales suffered nausea, headaches, insomnia, depression, nightmares, flashbacks, repeated hysterical attacks, stress and anxiety, and such other ills that will be described by physicians, healthcare providers, and medical records.

202. As a direct and proximate result of Defendants' conduct, Daisy Morales, was caused to suffer grievous physical, mental, psychological, and emotional pain, suffering, other injuries and losses.

**WHEREFORE,** Plaintiff demands judgment in his favor and against the Defendants, jointly and/or severally, for a sum in excess of the jurisdictional limits for arbitration, together with interest, costs and damages for pre-judgment delay.

Respectfully Submitted,

**Mincey & Fitzpatrick LLC**

ROYCE W. SMITH, ESQUIRE
Attorney for Plaintiffs

Date: July 24, 2014

54

## V E R I F I C A T I O N

I, Eriberto Rodriguez, as Administrator of the Estate of Joanne Rodriguez, Deceased, and on behalf of Xavier Rodriguez, a Minor, as I, Eriberto Rodriguez, am the Natural Parent and Guardian of Xavier Rodriguez, verify that I am the person who has knowledge of the facts set forth in the foregoing pleading, and that the facts are true and correct to the best of my knowledge, information and belief. I further understand that false statements herein are made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904, relating to unsworn falsification to authorities.

*Eriberto Rodriguez*

## VERIFICATION

I, Daisy Morales, verify that I am the person who has knowledge of the facts set forth in the foregoing pleading, and that the facts are true and correct to the best of my knowledge, information and belief. I further understand that false statements herein are made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904, relating to unsworn falsification to authorities.

Daisy Morales