IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIBERTO RODRIGUEZ, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 14-4435 |
| v. | |
| CITY OF PHILADELPHIA, et al., | |
| Defendants. | |

**OPINION**

**Slomsky, J.**                                                                          **June 18, 2018**

## I.    INTRODUCTION AND BACKGROUND

On July 24, 2014, Plaintiffs, family members of decedent Joanne Rodriguez and the administrator of her estate, commenced this suit in the Philadelphia Court of Common Pleas and included as a Defendant TriMark Corporation ("TriMark"), the supplier of the locking mechanism used in the ambulance that transported Joanne to Temple University Hospital ("Medic Unit 22").[1]  (Doc. No. 33 ¶¶ 14, 21.)  Upon arrival at the hospital, the door locking

---

[1]    Plaintiffs also named as Defendants the City of Philadelphia; the Philadelphia Fire Department Emergency Medical Services; April Smallwood and Lisa McCall, who were staffed on Medic Unit 22; VCI Emergency Vehicle Specialists, the seller of Medic Unit 22; and Horton Emergency Vehicles Co., the manufacturer of Medic Unit 22.  (Doc. No. 33 ¶¶ 9-16.)

actuator[2] failed, trapping Joanne and her unborn son inside the ambulance for a matter of minutes. (Id. ¶¶ 61-72.)

Defendants removed the case to this Court. (Id. ¶ 22.) On August 29, 2014, Plaintiffs filed an Amended Complaint,[3] and on December 8, 2014, Plaintiffs filed a Second Amended Complaint. (Doc. Nos. 10, 33.)

On December 22, 2014, TriMark filed a Third-Party Complaint against distributors HMI Group; HMI USA, Inc.; HMI, LTD.; and HMI Sources, Ltd. (hereinafter collectively "HMI"). TriMark had contracted with HMI for the purchase of actuators for ultimate distribution and installation in emergency transport vehicles, including ambulances and specifically Medic Unit 22. (Doc. No. 35 ¶ 6.)

On December 21, 2015, TriMark amended its Third-Party Complaint, adding as Third-Party Defendants Tesor Plus Corporation ("Tesor") and Pilock Corporation ("Pilock"), which were identified by HMI as manufacturers of the actuator at issue that was supplied to HMI before being used by TriMark. (Doc. No. 75 ¶ 9.) On August 19, 2016, Tesor and Pilock filed a Motion to Dismiss the Amended Third-Party Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (Doc. No. 90.) On February 17, 2017, this Court

---

[2] An actuator is "a mechanical device for moving or controlling something." Actuator, MERRIAM-WEBSTER, https://www.merriam-webster.com/actuator (last visited June 11, 2018).

[3] In their Amended Complaint, Plaintiffs added as a Defendant C. Crawford Mechem, M.D., Medical Director for Defendant Philadelphia Fire Department Emergency Medical Services. (Doc. No. 10 ¶ 11.)

entered an Order affording a period of jurisdictional discovery. (Doc. No. 119.) In that same Order, the Court denied Tesor and Pilock's Motion to Dismiss without prejudice.[4] (Id.)

On June 1, 2017, Tesor and Pilock filed another Motion to Dismiss the Amended Third-Party Complaint pursuant to Rule 12(b)(2). (Doc. No. 126.) On June 15, 2017, TriMark filed a Response in Opposition to Tesor and Pilock's Motion.[5] (Doc. Nos. 132-36.) On June 22, 2017, Tesor and Pilock filed a Reply. (Doc. No. 140.) On July 7, 2017, a hearing was held on the Motion. (Doc. No. 142.)

On October 31, 2017, this Court issued an Opinion and Order granting Tesor and Pilock's Motion to Dismiss the Amended Third-Party Complaint. (Doc. Nos. 143-44.) A month later on November 30, 2017, TriMark filed a Motion for Reconsideration, Entry of a Separate Judgment, or Leave to Appeal. (Doc. No. 146.) On December 14, 2017, Tesor and Pilock filed a Response in Opposition to TriMark's Motion. (Doc. No. 147.) On January 1, 2018, TriMark filed a Reply. (Doc. No. 151.)

TriMark advances three primary arguments in seeking reconsideration: (1) this Court erred by dismissing Tesor and Pilock as parties in this case and instead should transfer the action to the Northern District of Iowa, which would have jurisdiction over them; (2) alternatively, this

---

[4]  The Court explained in its February 17, 2017 Order that in light of the complexity of the jurisdictional issues presented in this case and because of the amount of evidence being marshalled during discovery, it would deny Tesor and Pilock's Motion to Dismiss without prejudice. (Doc. No. 119.) The Court reasoned that the Motion to Dismiss probably failed to address evidence that would be developed during jurisdictional discovery and hence a new, comprehensive motion should be filed after the conclusion of jurisdictional discovery. (Id.)

[5]  On June 22, 2016, Horton Emergency Vehicles Co. filed a Response in Opposition to Tesor and Pilock's Motion, adopting the arguments of TriMark in full. (Doc. No. 139.)

Court should enter a final judgment as to Tesor and Pilock under Federal Rule of Civil Procedure 54(b);[6] and, in the alternative, (3) dismissal of Tesor and Pilock warrants leave to appeal under 28 U.S.C. § 1292(b).[7] (Doc. No. 146.)

Tesor and Pilock respond initially by pointing out that TriMark's Motion should be denied because it is untimely pursuant to Local Rule 7.1(g). (Doc. No. 147.) In response to TriMark's first point, Tesor and Pilock argue that the Motion should be denied because TriMark does not satisfy the Motion for Reconsideration standard, cannot establish that personal jurisdiction exists over them in the proposed transferee court and improperly is seeking new relief in its request for transfer. (Id.) In response to TriMark's second point, they argue that entry of judgment under Rule 54(b) is not proper because TriMark cannot demonstrate the

---

[6] Federal Rule of Civil Procedure 54(b) provides as follows:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

[7] Title 28 U.S.C. § 1292(b) provides as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge of the Court of Appeals or a judge thereof shall so order.

necessary showing that there is no just reason for delay caused by entry of judgment.  (Id.)
Finally, in response to TriMark's third point, Tesor and Pilock argue that TriMark cannot satisfy
its burden of proving exceptional circumstances exist to warrant interlocutory appeal, and that it
cannot satisfy the three-part test courts apply when confronted with requests for an interlocutory
appeal under 28 U.S.C. § 1292(b).  (Id.)

TriMark's Motion for Reconsideration, Entry of a Separate Judgment, or Leave to Appeal
(Doc. No. 146) is now ripe for a decision.

## II.    STANDARD OF REVIEW

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact
or to present newly discovered evidence."  Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.,
602 F.3d 237, 251 (3d Cir. 2010) (quoting Max's Seafood Cafe ex rel. Lou-Ann, Inc. v.
Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)).  Thus, a proper motion for reconsideration "must
rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of
new evidence; or (3) the need to correct clear error of law or prevent manifest injustice."  Wiest
v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013) (quoting Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d
Cir. 2010)).

A motion for reconsideration should only address "factual and legal matters that the
Court may have overlooked."  In re Blood Reagents Antitrust Litig., 756 F. Supp. 2d 637, 640
(E.D. Pa. 2010) (quoting Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122
(E.D. Pa. 1993)).  It is improper that a motion for reconsideration ask the court to "rethink what
it had already thought through—rightly or wrongly."  Id. (quoting Glendon Energy Co., 836 F.
Supp. at 1122).  A motion for reconsideration is not a tool to present new legal theories or
arguments that could have been asserted to support the first motion.  Federico v. Charterers Mut.
Assur. Ass'n, Ltd., 158 F. Supp. 2d 565, 578 (E.D. Pa. 2001).

When the moving party argues that the court overlooked certain evidence or controlling decisions of law which were previously presented, a court should grant a motion for reconsideration only if the issues overlooked might reasonably have resulted in a different conclusion. Cataldo v. Moses, 361 F. Supp. 2d 420, 433 (D.N.J. 2004). Federal courts have a strong interest in the finality of judgments and therefore should grant motions for reconsideration sparingly. In re Asbestos Prods. Liab. Litig. (No. VI), 801 F. Supp. 2d 333, 334 (E.D. Pa. 2011).

## III. ANALYSIS

### A. TriMark's Motion for Reconsideration[8] Will Be Denied Because It Is Untimely Pursuant to Local Rule 7.1(g)

Eastern District of Pennsylvania Local Rule 7.1(g) provides that "[m]otions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of the order concerned."[9] The time frame is mandatory, evidenced by use of the word "shall."

Here, this Court issued its Opinion and Order granting Tesor and Pilock's Motion to Dismiss the Amended Third-Party Complaint on October 31, 2017. (Doc. Nos. 143-44.) TriMark filed its Motion for Reconsideration on November 30, 2017, 16 days after the 14-day time period expired. (Doc. No. 146.) Therefore, TriMark's Motion for Reconsideration is

---

[8]    As TriMark points out, "[m]otions for reconsideration do not arise under Rule 54(b)." (Doc. No. 151 at 9 (quoting Osei v. La Salle Univ., 493 F. App'x 292, 294 n.1 (3d Cir. 2012)).) Motions for reconsideration therefore should be treated differently from Rule 54(b) requests. (Id. (citing Quinn v. Cintron, No. 11-02471, 2013 WL 5842554, at *1 (E.D. Pa. Oct. 31, 2013)).) Accordingly, the Court will treat the Rule 54(b) request differently from the motion for reconsideration, and will not find that the Rule 54(b) request is untimely.

As for TriMark's alternative request for an interlocutory appeal under 28 U.S.C. § 1292(b), because the Court will grant entry of judgment pursuant to Rule 54(b), see Section III.D, infra, it need not rule upon that request.

[9]    The rule provides in its entirety: "Motions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of the order concerned, other than those governed by Federal Rule of Civil Procedure 59(e)."

untimely.  Bridges v. Colvin, 136 F. Supp. 3d 620 (E.D. Pa. 2015) (denying a motion for reconsideration of an interlocutory order that was filed one day late because it was untimely pursuant to Local Rule 7.1(g)).  Accordingly, the Motion (Doc. No. 146) will be denied.  Id. ("[I]t is not an abuse of discretion for a district court to impose a harsh result, such as dismissing a motion or an appeal, when a litigant fails to strictly comply with the terms of a local rule." (citing United States v. Eleven Vehicles, 200 F.3d 203, 214 (3d Cir. 2000))).

As noted, Local Rule 7.1(g) provides that the 14-day time frame applies to motions "other than those governed by Federal Rule of Civil Procedure 59(e)."  Rule 59(e) provides as follows: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  This rule does not affect the fact that TriMark's Motion for Reconsideration is untimely because the Motion was filed more than 28 days after entry of the October 31, 2017 Opinion and Order.

Moreover, the October 31, 2017 Opinion and Order was not a "judgment" under Rule 59(e).  The Federal Rules of Civil Procedure define "judgment" to "include[] a decree and any order from which an appeal lies."  Fed. R. Civ. P. 59(a).  "An order dismissing some, but not all, of a party's claims is neither a decree nor an order from which an appeal lies; rather, such an order is interlocutory in nature."  Bridges, 136 F. Supp. 3d at 628 (citing Andrews v. United States, 373 U.S. 334, 340 (1963)).  "[B]ecause an order dismissing fewer than all claims or parties is generally not a final judgment, a Rule 59(e) motion to challenge such an order may only be filed after the district court enters the final judgment."  Id. (citing Auto Servs. Co. v. KPMG, 537 F.3d 853, 856 (8th Cir. 2008)).

Thus, the October 31, 2017 Opinion and Order was not a "judgment" because it dismissed some, but not all parties and claims, given that claims against HMI in the Amended Third-Party Complaint still remain. Therefore, Rule 59(e) is not applicable to the instant motion.

For these reasons, TriMark's Motion for Reconsideration is untimely pursuant to Local Rule 7.1(g) and therefore will be denied. Even if the Motion was not untimely, reconsideration is not warranted.

## B. TriMark's Motion Will Be Denied Because TriMark Has Not Established that Reconsideration Is Warranted

Even if TriMark's Motion for Reconsideration was timely, reconsideration is not warranted. As noted, a proper motion for reconsideration "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013) (quoting Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010)).

Here, TriMark does not specify how it satisfies the standard for reconsideration. It has not identified an intervening change in controlling law that would affect the Court's recent decision and has not added any new evidence for the Court to consider. Id. TriMark also does not cite any clear errors of law or describe a manifest injustice. Id.

The only error TriMark alleges that the Court made was to "dismiss[] the Third-Party Complaint filed against [Tesor and Pilock]" instead of transferring the action because "transfer, rather than dismissal, is the option of choice." (Doc. No. 146-2 at 4 (quoting D'Jamoos v. Pilatus Aircraft Ltd., No. 07-1153, 2009 WL 3152188, at *2 (E.D. Pa. Oct. 1, 2009)).)

Tesor and Pilock submit that the Court was never asked to transfer, and therefore the Court did not err. (Doc. No. 147 at 22.) As they note, "Courts often take a dim view of issues raised for the first time in post-judgment motions." (Id. (quoting Kiewit E. Co. v. L&R Constr.

Co., 44 F.3d 1194, 1204 (3d Cir. 1995)).)  And "[a] motion to reconsider may not raise new arguments that could have (or should have) been made in support of or in opposition to the original motion."  (Id. (quoting Pac. Emp'rs Ins. Co. v. Glob. Reinsurance Corp. of Am., No. 09-6055, 2010 WL 2376131, at *5 (E.D. Pa. June 9, 2010)).)

The Court agrees with Tesor and Pilock.  First, the Court's decision to dismiss rather than transfer cannot be considered as an error of law because, as the record shows, this Court was never asked to transfer before it dismissed Tesor and Pilock as Third-Party Defendants.  TriMark improperly raises this argument for the first time in its motion for reconsideration.  Pac. Emp'rs Ins. Co., 2010 WL 2376131, at *5.

Second, the Court's decision to dismiss Tesor and Pilock as Third-Party Defendants does not warrant reconsideration to "prevent manifest injustice" because no such injustice exists.  As this Court has observed, "[i]n order for a court to reconsider a decision due to 'manifest injustice,' the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it.'"  Teri Woods Publ'g, L.L.C. v. Williams, No. 12-04854, 2013 WL 6388560, at *2 (E.D. Pa. Dec. 6, 2013) (citation omitted).  TriMark has failed to demonstrate such an error.  For these reasons, reconsideration is not warranted.

**C.   Transfer of This Case to the Northern District of Iowa Is Not Warranted**

TriMark asks this Court to transfer the matter to the Northern District of Iowa, which TriMark asserts would have jurisdiction over Tesor and Pilock.  Because the Northern District of Iowa does not have personal jurisdiction over Tesor or Pilock either, the Court will not transfer the action.

**1. The Court Will Not Transfer This Action Because the Proposed
Transferee Court Does Not Have Personal Jurisdiction over the Parties**

Pursuant to 28 U.S.C. § 1631, when a "court finds that there is want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed." The language of § 1631 "creates a rebuttable presumption in favor of transfer and that 'transfer, rather than dismissal, is the option of choice.'" D'Jamoos v. Pilatus Aircraft Ltd., No. 07-1153, 2009 WL 3152188, at *2 (E.D. Pa. Oct. 1, 2009) (quoting Britell v. United States, 318 F.3d 70, 74 (1st Cir. 2003)). However, "[t]he transferor court must 'first satisfy itself that the proposed transferee court has personal jurisdiction over the parties.'" Grynberg v. Ivanhoe Energy, Inc., 490 F. App'x 86, 105 (10th Cir. 2012) (citation omitted).[10]

Under Federal Rule of Civil Procedure 4(e), a federal court may exercise personal jurisdiction "over a nonresident of the state in which the court sits to the extent authorized by the law of that state." Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). Iowa's long arm statute "authorizes the widest jurisdictional parameters allowed by the Due Process Clause." Capital Promotions, L.L.C. v. Don King Prods., Inc., 756 N.W.2d 828, 833 (Iowa 2008).

---

[10] While both parties cite to 28 U.S.C. § 1631 as the relevant transfer statute to cure the absence of personal jurisdiction in this Court, "courts are divided as to whether this section permits transfer to cure lack of personal jurisdiction." Blackstone v. Ortiz, No. 16-8600 (RBK) (JS), 2018 WL 2148846, at *4 n.1 (D.N.J. May 9, 2018) (citing 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3842 (4th ed. 2015)). Indeed, "the better view is that Section 1631 is limited to subject matter jurisdiction defects and does not address problems with personal jurisdiction or venue," and that 28 U.S.C. § 1406(a) is the more appropriate section for the scenario here. Wright & Miller, supra.

Regardless of what section is applied, the transferee court still must have personal jurisdiction over the defendant. E.g., In re Christian, 403 F. App'x 651, 651-52 (3d Cir. 2010); Grynberg, 490 F. App'x at 105. Therefore, this Court will consider whether the Northern District of Iowa has personal jurisdiction over Tesor or Pilock.

The Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have "certain minimum contacts within the [forum state]" so that defending the suit "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). This principle is based on the notion that a defendant has "fair warning" that it may be subject to a suit in a state where it has a certain level of minimum contacts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

Courts have articulated two types of personal jurisdiction: general jurisdiction and specific jurisdiction. See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). When, as here, "no party . . . contends that there is a basis for general jurisdiction in Pennsylvania . . . [courts] are free to consider solely whether the alternative form of personal jurisdiction is present: specific personal jurisdiction." Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200-01 (3d Cir. 1998).

### a. Specific jurisdiction

"In order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" Bristol-Myers Squibb Co. v. Superior Court, 137 S. Ct. 1773, 1780 (2017) (emphasis omitted) (quoting Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" Id. (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

The Third Circuit directs that to determine whether specific jurisdiction exists, a court must engage in a three-part inquiry: (1) the defendant must have purposefully directed its activities at the forum state; (2) the litigation must arise out of or relate to at least one of those activities; and (3) if the first two requirements have been met, a court may consider whether the

exercise of jurisdiction otherwise comports with fair play and substantial justice. D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 103 (3d Cir. 2009).

The facts in this case relevant to the specific jurisdiction analysis are as follows. TriMark is a privately owned corporation that maintains a principal place of business in New Hampton, Iowa. (Doc. No. 75 ¶ 1.) It supplies door hardware systems for emergency transportation vehicles. (Id. ¶ 7.) To assemble these door hardware systems, TriMark contracted with HMI to supply actuators and other parts from foreign manufacturers. (Id. ¶ 8.)

Among the foreign companies that worked with HMI to supply actuators to TriMark were Tesor and Pilock. (Id. ¶ 9.) Both corporations are incorporated in the Republic of China, with principal and business headquarters in Taiwan. (Id. ¶¶ 3-4.) Neither company is incorporated, licensed, or registered to do business in Iowa.

Tesor and Pilock conducted business only with HMI's facility in Taiwan ("HMI Taiwan"), and Lobo Chen, General Manager and largest shareholder of both Tesor and Pilock, testified that until 2016, he was unaware HMI had any facilities in the United States. (Doc. No. 69:2-19.) Lobo Chen asserts that he never knew where HMI ultimately sold Tesor's products. (See Doc. No. 126-6 ¶¶ 14-16.) He states in his affidavit that Tesor's actuators are sold to "distributors in Taiwan who do not reveal to Tesor Plus the name, location and identity of their re-sale/purchasing customers or the location of those re-sale/purchasing customers." (Id. ¶ 14.) According to Lobo, Tesor sells its products "ex-factory," which by its custom entails shipping its products to locations in Taiwan designated by the customers, who are responsible for handling transportation from there to any location. (Doc. No. 126-4 at 52:11 to 53:20.)

Two other Tesor employees, Rita Hu and Lin YanKun, testified about their lack of knowledge that Tesor's products were being shipped to the United States as well as their lack of

knowledge about TriMark in general. Hu and YanKun are Tesor's former and current domestic sales representative, respectively. (Doc. No. 126-8; Doc. No. 126-9.) Both reside and work in Taiwan, speak and read Taiwanese and Mandarin, and have a minimal understanding of the English language. (Doc. No. 126-8 ¶¶ 1-3; Doc. No. 126-9 ¶¶ 1-3.)

Hu received a purchase contract written in English from HMI Taiwan in 2011 for a shipment of actuators. (Doc. No. 126-4 at 55:13 to 56:12, 57:9-13, 65:22 to 66:3.) Hu and YanKun testified that Tesor does not prepare HMI Taiwan's purchase orders and that HMI Taiwan makes all shipping arrangements for products bought from Tesor, and pays for and provides the shipment information for Tesor purchases. (Doc. No. 126-8 ¶¶ 5-6, 10; Doc. No. 126-9 ¶¶ 5-6, 10.) Further, neither person is familiar with TriMark, and because their understanding of English is minimal, they both understood the term "Tri/Mark" on the purchase contract to mean "shipping mark," which is the label provided by HMI Taiwan. (Doc. No. 126-8 ¶¶ 7-8; Doc. No. 126-9 ¶¶ 7-8.) They also did not know what the word "Minneapolis" on the purchase contract meant; and there was no other indicator on the purchase contract that the products were being shipped to somewhere in the United States. (Doc. No. 126-8 ¶ 11; Doc. No. 126-9 ¶ 11.)

More than half of Tesor's products are manufactured for use in vehicles. (<u>Id.</u> at 104:9-17.) Tesor employs salespersons like Michael Chen who target foreign countries, including the United States, although Russia and Australia generate its main business. (<u>Id.</u> at 77:5 to 78:14.)

Lobo Chen attends a yearly Consumer Electronics Show in Las Vegas, Nevada, and either he or another representative of Tesor and Pilock has attended trade shows in Florida and Louisiana. (Doc. No. 135-6 at 93:12 to 94:15; <u>see</u> Doc. No. 135-13.) Michael Chen accompanied Lobo to the Las Vegas trade show three times: in 2010, 2011 and 2012. (Doc. No.

135-6 at 94:16-23.) At the trade show, Tesor representatives have a booth that interested persons can approach to inquire about the company. (<u>Id.</u> at 94:2-15.) Tesor representatives maintain records of people who approached their booth for information. (<u>Id.</u>)

Aside from the trade shows, the only person who travels on behalf of Tesor or Pilock to the United States on business trips is Lobo Chen. (Doc. No. 126-4 at 111:21 to 112:2.) He has taken three business trips to the United States, one to Detroit, Michigan, and two others to California, to meet potential customers. (<u>Id.</u> at 110:1 to 111:11.)

While TriMark at all times before the accident purchased Tesor's actuators from HMI and not Tesor or Pilock, there is some evidence in the record that might suggest there was a business relationship among TriMark and Tesor and Pilock. Back in 2001, Lobo Chen was identified in an e-mail between Dave Magner of TriMark and Jerry Lin of HMI as a contact person and the one who "will be handling Tri/Mark's projects from now on." (Doc. No. 135-7 at 12.) In 2008, Magner contacted Lin to inform him that he would be in Taipei, Taiwan, and wanted to meet to discuss "any new products that might be available from Pilock or others," and "to make sure all is going well with Pilock or others." (Doc. No. 135-9 at 4.) Magner's "main topic of interest" was "electronics or motorize[d] products that would be in a door or vehicle." (<u>Id.</u>)

The two arranged a visit to Pilock, during which Magner reviewed the assembly area. (<u>Id.</u> at 2.) Magner pointed out "pin support fracturing" in some actuators, and Pilock and HMI agreed to "prepare a recommended plan of action for [TriMark's] review." (<u>Id.</u>) Magner had also visited Tesor or Pilock's facilities in 2005 along with Anita Reichling, another TriMark engineer. (Doc. No. 135-8 ¶ 7.) In each of these visits, a TriMark employee met with employees of Tesor or Pilock and discussed projects, including the actuator model at issue in this case. (<u>Id.</u>)

Magner also communicated directly with Michael Chen in 2010 to inquire about Tesor's actuators after Magner visited Tesor's Global Source website, which it no longer operates. (Doc. No. 135-7 at 13.) The two exchanged e-mails for a period between June 8, 2010 and July 28, 2010. (Id.) During the course of this conversation, Michael Chen made statements characterizing Tesor or Pilock's relationship with TriMark, such as "I guess the last work partnership was [a] really long time ago," "we are going into a partnership with [TriMark] and HMI," and "you are [a] longtime customer of us or actually HMI since your order is handle[d] by them." (Id. at 8, 10.) Michael Chen also discussed problems between his employer and HMI, and suggested a company to replace HMI, Creative Works. (Id. at 8.) Magner agreed to "consider it" if Creative Works would submit a quote, but explained that TriMark "had a lot of issues with late delivery from Creative Works in the last couple months," while it has "had no delivery issues" with HMI. (Id. at 7.)

Magner also e-mailed Michael Chen in September 2012 to inform him that Magner and another TriMark employee would like to visit Tesor or Pilock, and Michael Chen responded to state that he remembered Magner but was away on business. (Doc. No. 135-10 at 3-5.) Another Tesor employee then offered to schedule a meeting on October 22 or 23, 2012. (Id. at 2.) There is no record of a follow-up communication.

In two different shipments in June and September of 2015, Tesor directly sold to TriMark approximately 6,000 actuators. (Doc. No. 126-4 at 16:9 to 17:12, 113:12-19; Doc. No. 126-6 ¶ 15.) This constituted about one-percent of Tesor's sales in 2015. (Doc. No. 126-4 at 16:9 to 17:12, 113:12-19; Doc. No. 126-6 ¶ 15.)

According to Scott Perkins, Senior Vice President of TriMark, TriMark purchased actuators manufactured by Tesor or Pilock for use in motor vehicle locking systems "on a yearly

basis" from late 2002 "until the time of this accident on October 1, 2012 and beyond. Prior to the accident, TriMark purchased over a million locking system actuators, hundreds of thousands of which were the same model number of that installed in [Medic Unit 22]." (Doc. No. 135-8 ¶ 4.)

HMI records show that the actuator found in Medic Unit 22 was produced in June 2011. (Doc. No. 136-8 at 2.) The shipment was delivered to TriMark in New Hampton, Iowa through Minneapolis, Minnesota pursuant to the purchase orders. (Doc. No. 136-2.) The purchase contract between HMI and Tesor, however, shows that the actuators were being shipped from Taiwan to TriMark in Minneapolis, and does not mention any Iowa location. (Doc. No. 136-12.)

### i. TriMark has failed to establish that Tesor and Pilock purposefully directed activities at Iowa.

The first prong of this inquiry involves determining whether a defendant has the requisite minimum contacts within the forum state. To satisfy this prong, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum state." Hanson v. Denckla, 357 U.S. 325, 353 (1958). While the defendant need not have entered the forum state, a deliberate targeting of the forum is necessary. Id. Further, jurisdiction must be the result of intentional contact, not mere "random, fortuitous, or attenuated" acts. BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000).

Here, TriMark points to the parties' "persistent relationship," the quantity of products Tesor and Pilock supplied to TriMark and that the "defective part was sent to Iowa from [Tesor and Pilock]." (Doc. No. 146-2 at 10.) TriMark alleges that Tesor and Pilock had a "contract with HMI to send actuators to TriMark in Iowa," and in fact sent to TriMark "hundreds of thousands of actuators including the defective actuator at issue here." (Id. at 11-12.)

As Tesor and Pilock submit in their Response, contrary to TriMark's assertion that Tesor and Pilock contracted to send actuators to Iowa, the purchase contract between HMI and Tesor refers to Minneapolis, Minnesota and does not refer to Iowa. (Doc. No. 146-5; Doc. No. 147 at 28). And importantly, HMI Taiwan, not Tesor or Pilock, prepared the purchase orders and made the shipping arrangements to TriMark in Iowa. (Doc. No. 126-4 at 55:13 to 56:12, 57:9-13, 65:22 to 66:3; Doc. No. 126-8 ¶¶ 5-6, 10; Doc. No. 126-9 ¶¶ 5-6, 10.) While Tesor and Pilock's products eventually made their way to Iowa, on the basis of these facts, the Court cannot reasonably infer that such was Tesor or Pilock's intent.

As the Court noted in its prior Opinion, it is unclear what level of awareness can be attributed to Tesor and Pilock that its actuators were being sold into the United States or that TriMark was its client. There was direct contact with TriMark prior to the accident through Michael Chen, a sales representative who reported directly to Lobo Chen, and then Tesor sold directly to TriMark three years after the accident in 2015. Further, there were multiple visits by TriMark engineers to Tesor's facility. That said, Lobo Chen and two other employees testified that they never knew their products were being sold into the United States. And that Tesor sells its products "ex-factory," meaning its customers are responsible for handling transportation of its products from Taiwan to any other location, tends to show the company did not intend to ship products into any specific foreign forum. (Doc. No. 126-4 at 52:11 to 53:20.)

On these facts, the Court cannot reasonably infer that any relationship Tesor or Pilock had with TriMark in terms of its shipments amounted to intentional, rather than incidental, contact with Iowa. Neither company is registered to do business in Iowa. Neither company maintained a place of business, employees or any bank accounts in Iowa. Neither company designs, manufactures or advertises its products in Iowa, nor does either tailor specific designs of its

product to Iowa. Neither company has contracted to sell goods to Iowa. There are some facts to suggest that certain people within the companies were aware their products were ultimately being sold to Trimark. However, as the Third Circuit has noted, targeting a national market does not amount to purposeful availment of the privilege of conducting activities in a specific state. See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 103-04 (3d Cir. 2009) ("[A]ny connection of [the defendant] to [the forum state] merely was a derivative benefit of its successful attempt to exploit the United States as a national market."). Although there were two shipments that were sold directly to TriMark, this occurred after this case was initiated.

To support its position that Tesor and Pilock reasonably could have anticipated being haled into federal court in Iowa because it purposefully directed its actuators at Iowa, TriMark relies on the Eighth Circuit case Creative Calling Solutions, Inc. v. LF Beauty Ltd., 799 F.3d 975 (8th Cir. 2015). (Doc. No. 146-2 at 11.) In Creative Calling, an Iowa manufacturer of beauty products brought a breach of contract action against a Hong Kong corporation. 799 F.3d at 980. The manufacturer alleged that the Hong Kong corporation breached the contract between them when it shipped allegedly defective samples to the manufacturer in Iowa. Id. at 979. To support its position that a court in Iowa could exercise personal jurisdiction over the foreign corporation, the manufacturer claimed that the corporation first contacted it in Iowa to solicit business, engaged in daily communications with the manufacturer for almost two years after contractual negotiations had concluded, shipped thousands of pre-production and production samples to Iowa pursuant to the contract and remitted payments to the manufacturer in Iowa under the agreement. Id. at 980. The Eighth Circuit found that the manufacturer identified sufficient facts to support a reasonable inference that the corporation established minimum contacts with Iowa as would permit the exercise of personal jurisdiction. Id.

The <u>Creative Calling</u> case is easily distinguishable from the circumstances here. In that case, the Hong Kong-based defendant delivered thousands of product samples to Iowa in the course of its business relationship with the Iowa plaintiff. 799 F.3d at 975. This fact was most relevant because the dispute between the parties concerned those samples, allegedly defective, that were shipped to Iowa. <u>Id.</u> By contrast, the shipments here, including the defective actuator in question in this case, were sent to Minneapolis pursuant to the purchase contract. Importantly, as noted previously the contract to ship the products was between the distributor, HMI, and TriMark, not between the parties as in <u>Creative Calling</u>. And the purchase orders to ship products to Iowa were prepared by HMI Taiwan and not Tesor or Pilock, and there is scant evidence that Tesor or Pilock was aware of the terms of those purchase orders.

In sum, TriMark has not established that Tesor or Pilock purposely directed activities at Iowa as required to satisfy the first prong of the specific jurisdiction analysis. TriMark also has failed to establish the second prong of the specific jurisdiction test, which follows.

### ii. TriMark has failed to establish that the litigation arises out of or relates to at least one of the activities in Iowa.

As the Supreme Court stated in <u>Bristol-Myers</u>, "[i]n order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" <u>Bristol-Myers Squibb Co. v. Superior Court</u>, 137 S. Ct. 1773, 1780 (2017) (emphasis omitted) (quoting <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 127 (2014)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" <u>Id.</u> (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011)).

On these facts, there is nothing to show that the suit arose out of or related to Tesor or Pilock's contacts with Iowa. The accident giving rise to all claims in this case occurred in Philadelphia, Pennsylvania. Even assuming the direct sales to TriMark in 2015 were made into Iowa, these sales were made after this suit was initiated in 2014. Because this suit did not arise out of or relate to Tesor or Pilock's contacts with Iowa, TriMark has failed to establish the second prong of the specific jurisdiction requirement.

### iii. The Exercise of Jurisdiction over Tesor or Pilock by a Court in Iowa Does Not Comport with Fair Play and Substantial Justice.

The exercise of jurisdiction by a court in Iowa over Tesor or Pilock also would not comport with fair play and substantial justice, the third prong of the specific jurisdiction test. In World-Wide Volkswagen v. Woodson, the Supreme Court noted "fairness factors" that a court should consider in deciding whether a forum's exercise of jurisdiction would fail to comport with fair play and substantial justice. 444 U.S. 286 (1980). These factors are as follows:

> "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."

Burger King Corp. v. Rudzerwicz, 471 U.S. 462, 477 (1985) (quoting World-Wide Volkswagen, 444 U.S. at 292). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." Id.

Here, regarding the first factor, the burden on Tesor and Pilock of having to litigate in Iowa is high given that they are Taiwanese corporations and would need to submit to a foreign nation's judicial system. As the Supreme Court has stated, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national

borders." Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 114 (1987) (O'Connor, J.,
plurality opinion).

Regarding the second factor, Iowa has an interest in that TriMark is an Iowa corporation.
However, as stated above, the dispute did not arise from contacts with Iowa. In that regard,
Iowa's interest is diminished. The same is true for the third factor regarding TriMark's interest in
obtaining convenient and effective relief. Tesor and Pilock are Chinese companies against whom
a judgment would be most difficult to enforce.

As for the fourth and fifth factors, the Justice O'Connor plurality opinion in Asahi
provides some relevant guidance even though the appeal in that case dealt with the question of a
state court's jurisdiction over a foreign defendant, rather than a federal court. Id. at 115. Justice
O'Connor commented that these factors

> call[] for a court to consider the procedural and substantive policies of other
> nations whose interests are affected by the assertion of jurisdiction by the [forum]
> court. The procedural and substantive interests of other nations in a state court's
> assertion of jurisdiction over an alien defendant will differ from case to case. In
> every case, however, those interests, as well as the Federal interest in
> Government's foreign relations policies, will be best served by a careful inquiry
> into the reasonableness of the assertion of jurisdiction in the particular case, and
> an unwillingness to find the serious burdens on an alien defendant outweighed by
> minimal interests on the part of the plaintiff or the forum State. "Great care and
> reserve should be exercised when extending our notions of personal jurisdiction
> into the international field."

Id. (emphasis omitted) (citation omitted).

Reflecting on the above, Justice O'Connor wrote that "[c]onsidering the international
context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the
forum State, the exercise of personal jurisdiction by a California court over [the foreign
defendant] in this instance would be unreasonable and unfair." Id. at 116.

Here, like in Asahi, the dispute extends to an international context and jurisdiction over
Tesor or Pilock in Iowa would be a heavy burden. TriMark's interest is lessened because it has

alleged that it is entitled to obtain convenient and effective relief on its pending claims of indemnity and contribution from HMI.  And the state of Iowa's interest is slight given minimal contact with Iowa by Tesor and Pilock.  Further, jurisdiction in Iowa is not necessarily in the best interests of the other country involved and is not warranted by any international policy considerations.  For these reasons, exercise of personal jurisdiction by a court in Iowa over Tesor or Pilock would be unreasonable and unfair.

In sum, the fairness factors counsel against exercise of jurisdiction by the Northern District of Iowa over Tesor and Pilock, and for all the reasons noted, specific jurisdiction has not been established.

> **D.**  **TriMark's Motion to Certify Will Be Granted Because TriMark Has Satisfied Its Burden of Proving Certification Is Warranted Under Fed. R. Civ. P. 54(b)**

"Ordinarily, an appeal can be taken only after a final judgment has been entered as to all of the pending claims and parties in a case."  Bush v. Adams, 629 F. Supp. 2d 468, 472 (E.D. Pa. 2009) (citing Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 460 F.3d 470, 476 (3d Cir. 2006)).  However, "[t]he purpose of Rule 54(b) is to allow a court that dismisses some, but not all, of the claims or parties in a case to nonetheless enter final judgment as to the dismissed claims, allowing an immediate appeal without waiting for the remaining claims to be decided."  Id.

"The function of the district court under the Rule is to act as a 'dispatcher.'  It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal."  Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 8 (1980) (citation omitted).  "The timing of such a release is, with good reason, vested by the rule primarily in the discretion of the District Court as the one most likely to be familiar with the case and with any justifiable reasons for delay."  Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437 (1956).

In general, "certification pursuant to this rule is not to be entered routinely." Glaziers v. Newbridge Secs., Inc., 823 F. Supp. 1188, 1190 (E.D. Pa. 1993). Courts must "assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" Curtiss-Wright, 446 U.S. at 8 (internal quotation omitted); see Sussex Drug Prods. v. Kanasco, Ltd., 920 F.2d 1150, 1153 (3d Cir. 1990) ("Disfavoring piecemeal appeals is a long-standing policy of the federal courts."); Allis-Chalmers Corp. v. Phila. Elec. Co., 521 F.2d 360, 363 (3d Cir. 1975) (explaining that Rule 54(b) was designed "to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties").

That said, "[c]ourts have routinely entered judgment under Rule 54(b) in multi-defendant cases where some but not all defendants are dismissed for want of personal jurisdiction." Bush, 629 F. Supp. 2d at 472 (citing DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 282 (3d Cir. 1981); Ill. Bell Tel. Co. v. Global NAPs Ill., Inc., 551 F.3d 587, 596 (7th Cir. 2008); Chamberlain v. Harnischfeger Corp., 516 F. Supp. 428 (E.D. Pa. 1981)); accord Animale Grp., Inc. v. Sunny's Perfume, Inc., No. 5:07-cv-13, 2007 WL 2010476, at *1 (S.D. Tex. July 5, 2007) (granting a Rule 54(b) motion after dismissing two defendants for lack of personal jurisdiction and noting that "[o]ne would be hard-pressed to find a decision in which a court denied Rule 54(b) certification after dismissing a party for lack of personal jurisdiction"). "Third-party complaints seeking indemnity or contribution have in several instances been held to present a severable claim, capable of separate final adjudication under Rule 54(b) . . . ." Waldorf v. Shuta, 142 F.3d 601, 611 (3d Cir. 1998) (quoting Capital Transit Co. v. District of Columbia, 225 F.2d 38, 40 (D.C. Cir. 1955)). Also, as in this case, the "case for severability" is "strengthened" by the fact

that dismissal was due to a legal question, the existence of personal jurisdiction.  Capital Transit, 225 F.2d at 40.

There are two requirements for entry of judgment under Rule 54(b).  First, the order at issue must be a final judgment, meaning the "ultimate disposition of an individual claim entered in the course of a multiple claims action."  Curtiss-Wright, 446 U.S. at 7-8 (quoting Sears, Roebuck & Co., 351 U.S. at 436).  Second, there must be "no just reason for delay," taking into account both judicial administrative interests and the equities involved.  Id. (quoting Fed. R. Civ. P. 54(b)).

Here, the Court's Order dismissing Tesor and Pilock for lack of personal jurisdiction is a final judgment for purposes of Rule 54(b) because it is an "ultimate disposition" of the claims against these dismissed parties in this Court.  Id. (citation omitted).  Therefore, the first requirement for entry of judgment under Rule 54(b) is met.

In determining whether the second factor is met, this Court must consider "judicial administrative interests and the equities involved."  Id. (quoting Fed. R. Civ. P. 54(b)).  The Third Circuit lists the following relevant factors:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 203 (3d Cir. 2006) (citation omitted).

In applying the first factor, on October 31, 2017, the Court granted Tesor and Pilock's Motion to Dismiss for lack of personal jurisdiction in this Court.  (Doc. No. 144.)  In addition, the Court is denying the Motion for Reconsideration, including a request to transfer the case to

the Northern District of Iowa because that court would not have personal jurisdiction over Tesor or Pilock. Tesor and Pilock now are no longer parties in this action and hence, no claims against Tesor or Pilock exist. Therefore, this factor is in favor of granting TriMark final certification.

As for the second factor, "the possibility that the need for review might or might not be mooted by future developments in the district court," Berckeley Inv. Grp., 455 F.3d at 203, Tesor and Pilock filed a Motion to Dismiss for lack of personal jurisdiction (Doc. No. 126). The Court subsequently granted that motion. (Doc. No. 144.) For this reason, there is neither a present nor a future need for review with regard to claims against Tesor and Pilock. Therefore, this factor does not impede the entry of final judgment.

The third factor requires the Court to consider "the possibility that the reviewing court might be obliged to consider the same issue a second time." Berckeley Inv. Grp., 455 F.3d at 203. In undertaking that consideration, the Court finds that entry of judgment creates no danger that the Court of Appeals will have to consider the same issue twice, since these Third-Party Defendants and concomitantly their claims were dismissed from the case for lack of personal jurisdiction, an issue not present regarding any of the remaining claims.

Under the fourth factor, the Court must determine whether there exists a claim or counterclaim which might result in set-off against the judgment sought to be made final. Berckeley Inv. Grp., 455 F.3d at 203. Because the claims against Tesor and Pilock were dismissed, there is no issue of set-offs against the judgment. Therefore, this factor weighs in favor of entry of judgment.

In considering the fifth factor, the Court must look to "miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing

claims, expense, and the like." <u>Berckeley Inv. Grp.</u>, 455 F.3d at 203. These factors are not ones that would have any impact on the entry of a final judgment.

Accordingly, TriMark's Motion for entry of final judgment will be granted. For that reason, the Court need not consider whether leave to appeal is warranted under 28 U.S.C. § 1292(b).

## IV.    CONCLUSION

For the foregoing reasons, TriMark's Motion for Reconsideration, Entry of a Separate Judgment, or Leave to Appeal will be granted in part on TriMark's request for entry of judgment pursuant to Federal Rule of Civil Procedure 54(b). It will be denied in part on TriMark's request for reconsideration and to transfer their third-party action to the Northern District of Iowa. Because the Court will grant TriMark's request for entry of judgment, the Court need not determine whether leave to appeal is warranted under 28 U.S.C. § 1292(b).